UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONNESIA BROWN,

*Plaintiff*,

-against-

9:17-CV-1036
(MAD/ATB)

THE STATE OF NEW YORK, THE NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION, NEW YORK STATE CORRECTIONS
OFFICER MATTHEW CORNELL, Individually and in his
Official capacity,

*Defendants*.

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(a)

LETITIA JAMES
Attorney General of the State of New York
Syracuse Regional Office
Attorney for Defendant Cornell
300 S. State Street, Ste. 300
Syracuse, NY 13202

By:    Aimee Cowan
       Assistant Attorney General, of Counsel
       Bar Roll No. 516178
       Telephone: (315) 448-4800
       Fax: (315) 448-4853
       E-mail: Aimee.Cowan@ag.ny.gov

i

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………………………………………..……..iii

**PRELIMINARY STATEMENT**…………………………………………………………...1

**STATEMENT OF FACTS**………………………………………………………………1

**STANDARD OF REVIEW**……………………………………………………………4

**ARGUMENT**…………………………………………………………………….....6

    I.     PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES……...6

    II.    PLAINTIFF'S FALSE ARREST/FALSE IMPRISONMENT CLAIMS PURSUANT TO STATE LAW AND SECTION 1983 MUST BE DISMISSED …………………..10

    III.   PLAINTIFF'S DUE PROCESS CLAUSE CLAIMS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS MUST BE DISMISSED…………………15

    IV.   PLAINTIFF'S EMOTIONAL DISTRESS CLAIM IS BARRED BY THE PLRA...21

    V.    DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY……………………..22

**CONCLUSION**………………………………………………………….………….....23

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Ambrose v. City of New York,* 2009 WL 890106 (S.D.N.Y.2009)…………………………………..17

*Amore v. Novarro,* 624 F.3d 522 (2d Cir. 2010)……………………………………………………23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………………………..5

*Apostol v. City of New York*, 2014 WL 1271201 (E.D.N.Y. 2014)………………………………..13

*Bender v. Alvarez*, 2009 WL 112716 (E.D.N.Y. 2009)……………………………………………13

*Bennett v. Vidal,* 267 F. Supp. 3d 487 (S.D.N.Y. 2017)…………………………………………17, 19

*Binder & Binder PC v. Barnhart*, 481 F.3d 141 (2d Cir. 2007)……………………………………5

*Caldarola v. Calabrese,* 298 F.3d 156 (2d Cir. 2002)……………………………………………23

*Carlisle v. City of New York*, 2007 WL 998729 (S.D.N.Y. 2007)……………………………13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………………………………..5

*Cilauro v. Duff*, 2009 WL 1405422 (N.D.N.Y. 2009)……………………………………………17

*Cohen v. Welch*, 2017 WL 3311244 (N.D.N.Y. 2017)……………………………………………..7

*Cox v. Malone*, 199 F. Supp. 2d 135 (S.D.N.Y. 2002)……………………………………………22

*D'Amico v. City of New York*, 132 F.3d 145 (2d Cir. 1998)………………………………………...5

*Dash v. Mayers*, 2020 WL 1946303 (S.D.N.Y. 2020)……………………………………………21

*Deanda v. Hicks*, 137 F. Supp. 3d 543 (S.D.N.Y. 2015)…………………………………………23

*Demosthene v. City of New York,* 2018 WL 10072931 (E.D.N.Y. 2018)…………………………18

*Dusenbery v. United States*, 534 U.S. 161 (2002)………………………………………………...16

*Edwards v. Horn,* 2012 WL 760172 (S.D.N.Y. 2012)……………………………………………22

*Escalera v. Lunn,* 361 F.3d 737 (2d Cir.2004)……………………………………………………23

*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016)……………………………17

*Gilliard v. City of New York,* 2013 WL 521529 (E.D.N.Y. 2013)………………………………23

*Greene v. City of N.Y.,* 2017 WL 1030707 (E.D.N.Y. 2017)……………………………………18, 19

*Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)……………………………………….7

*Henderson v. Annucci*, 2016 WL 3039687 (W.D.N.Y. 2016)………………………………………..6

*Henson v. Gagnon,* No. 913CV0590GTSTWD, 2015 WL 9809874 (N.D.N.Y. 2015)…………..18

*Hewitt v. The City of New York,* 2012 WL 4503277 (E.D.N.Y. 2012)…………………………...19

*Holland v. City of New York,* 197 F. Supp. 3d 529 (S.D.N.Y. 2016)……………………………..22

*Jeffreys v. City of New York,* 426 F.3d 554 (2d Cir. 2005)………………………………………19

*Jimenez v. City of N.Y.*, 2016 WL 1092617 (E.D.N.Y. 2016)………………………….....12, 13

*Jones v. Bock*, 549 U.S. 199 (2007)………………………………………………………..8

*Kerzer v. Kingly Mfg.*, 156 F.3d 396 (2d Cir. 1998)………………………………………..5

*Lauderdale v. City of New York,* 2018 WL 1413066 (S.D.N.Y. 2018)…………………………17

*Leon v. Johnson*, 96 F. Supp. 2d 244 (W.D.N.Y. 2000)………………………………………..21

*Maddox v. Fowler*, 2015 WL 4366222  (N.D.N.Y. 2015)………………………………………..16

*Matsushita Elec. Indus, Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)…………………..5

*McMillian v. Walters*, 2017 WL 8894737 (N.D.N.Y. 2017)……………………………………….8

*Ortiz v. Annucci*, 2019 WL 1438006 (S.D.N.Y. 2019)……………………………………………5

*Perez v. Fischer,* 2012 WL 1098423 (N.D.N.Y. 2012)…………………………………………...17

*Porter v. Nussle,* 534 U.S. 516 (2002)……………………………………………………..6

*R. B. Ventures, Ltd. v. Shane*, 112 F.3d 54 (2d Cir. 1997)……………………………………….5

*Read v. Calabrese*, 2015 U.S. Dist. LEXIS 38911 (N.D.N.Y. 2015)……………………………6

*Riles v. Buchanan*, 2016 WL 4572321 (2d Cir. 2016)…………………………………………….8

*Ross v. Blake*, 136 S. Ct. 1850 (2016)……………………………………………….7, 8, 9

*Ruggiero v. County of Orange*, 467 F.3d 170 (2d Cir. 2006)……………………………………...6

*Seidman v. Colby*, No. 118CV202TJMCFH, 2019 WL 1060643 (N.D.N.Y. Mar. 6, 2019)……....16

*Shakur v. Thomas,* 2018 WL 4635722 (N.D.N.Y. 2018)……………………………......8, 10

*Smith v. Webber*, 2020 WL 888016 (E.D.N.Y. Feb. 24, 2020)………………………………13

*Thomas v. Delaney*, 2019 WL 4247807 (N.D.N.Y. 2019)…………………………………………8

*Thompson v. Carter*, 284 F.3d 411 (2d Cir. 2002)……………………………………21, 22

*Thompson v. Hernandez*, 2020 WL 1066252 (E.D.N.Y. Mar. 5, 2020)…………………………11, 13

*Toliver v. City of New York*, 530 F. App'x 90 (2d Cir. 2013)………………………………………..21

*Torres v. Carry*, 672 F. Supp. 2d 338 (S.D.N.Y. 2009)…………………………………………..7

*Walczyk v. Rio,* 496 F.3d 139 (2d Cir. 2007)……………………………………………………23

*Walker v. Keyser*, 2001 WL 1160588 (S.D.N.Y.  2001)……………………………………18

*Washington v. Piper,* 2019 WL 6343516 (S.D.N.Y. 2019)……………………………………21

*Warren v. Westchester Cty. Jail*, 106 F. Supp. 2d 559 (S.D.N.Y. 2000)…………………………22

*White v. Drake,* 2011 WL 4478988 (N.D.N.Y. 2011)……………………………………………8

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996)………………………………………………..5, 11

*Williams v. King,* 56 F. Supp. 3d 308 (S.D.N.Y. 2014)………………………………………9

*Wilson v. Phoenix House,* 2011 WL 3273179 (S.D.N.Y. 2011)…………………………………22

*Woodford v. Ngo*, 548 U.S. 81 (2006)……………………………………………………...6

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007)………………………………………………11

## **Statutes**

42 U.S.C. §1983……………………………………………………………………....1, 10

42 U.S.C. § 1997e(a)………………………………………………………………..6, 14, 21

Fed. R. Civ. P. 56(a)……………………………………………………………….…1,4

N.Y. Comp. Codes R. & Regs. § 701.5……………………………………………………6, 7

New York Criminal Procedure Law §440……………………………………......4, 14, 20

New York Penal Law §205.25……………………………………………………………..12

U.S. Const. amend. IV…………………………………………………………………...11

## PRELIMINARY STATEMENT

Plaintiff filed the instant matter on September 19, 2017, alleging that pursuant to 42 U.S.C. §1983 ("Section 1983"), Defendants violated Plaintiff's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution and the laws of the State of New York. (Dkt. No. 1). Specifically, Plaintiff alleges that on January 21, 2016, Defendant Correction Officer Mathew Cornell planted a weapon on Plaintiff while he was incarcerated at Auburn Correctional Facility ("Auburn"). (Dkt. No. 1, p. 1). Defendants moved to dismiss Plaintiff's Complaint with respect to the state law claims pursuant to Federal Rule of Civil Procedure 12(b)(1) based on lack of subject matter jurisdiction. (Dkt. Nos. 11, 17).

The Court granted Defendants' motions to dismiss in part, dismissing the State of New York and the New York State Department of Corrections and Community Supervision as defendants. (Dkt. No. 21). The Court also dismissed state law assault and battery claims and all official capacity claims against Defendant Cornell. (*Id.*). The only remaining claims are Plaintiff's (1) First and Second Claim of false arrest/false imprisonment pursuant to state law and Section 1983 against Cornell and (2) Plaintiff's Third Claim of denial of right to fair trial pursuant to Section 1983 against Cornell. Defendant Cornell respectfully requests that the Court grant his motion for summary judgment pursuant to Fed. R. Civ. P. 56(a) and dismiss the remaining claims against him, with prejudice.

## STATEMENT OF FACTS

Plaintiff was convicted in 2011 of Robbery in the Second Degree. *See,* http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120. All claims in this matter arose out of Auburn, where Plaintiff was incarcerated as a result of his felony conviction. *See*, Dkt. No. 1, generally. Approximately a week prior to the incident that is the subject of this lawsuit, Plaintiff

1

was involved in a fight with another inmate in which the other inmate cut Plaintiff with an unknown weapon. (Attorney Cowan Declaration ["Cowan Dec."], Ex. B, pp. 46-47).

On January 21, 2016, Auburn Sgt. Steven Pyke authorized Officer Cornell to frisk cell D-4-37, which was Plaintiff's cell at that time. (*Id*., Ex. E, pp. 1, 16; Ex. D, pp. 28-29). Sgt. Pyke ordered Officer Cornell to perform the frisk based on suspicion that he, Sgt. Pyke, had gathered. (*Id*., Ex. E, pp. 1, 16; Ex. D, pp. 28-29; Ex. C, p. 66). Suspicion to frisk an inmate can be gleaned from tips and confidential informants within the facility. (*Id*., Ex. D, p. 29; Ex. C, p. 65). Once Officer Cornell arrived at Plaintiff's cell, he pat frisked Plaintiff outside of his cell. (*Id*., Ex. B, p. 36; Ex. E, p. 16). According to Plaintiff, Officer Cornell told him that he had information that Plaintiff had a weapon. (*Id*., Ex. B, pp. 37-38).

During the pat frisk, Officer Cornell felt an unknown object in the inmate's buttocks area. (*Id*., Ex. E, pp. 1, 17, 18, 19, 25). Consequently, Sgt. Pyke authorized a strip frisk. (*Id*., Ex. E, p. 16). Plaintiff was strip frisked in D-block 4 and 5 center room. (*Id*.). Sgt. Pyke was present during the strip frisk. (*Id*., Ex. E, p.16; Ex. C, p. 54). During Plaintiff's strip frisk, Plaintiff voluntarily surrendered a weapon from his buttocks area. (*Id*., Ex. E, pp. 1, 16, 17). The weapon is described as a toothbrush handle sharpened to a point at one end, with a cloth handle, measuring eight inches by one half inch. (*Id*., Ex. E, pp. 1, 16-19). The weapon was bagged, labeled, photographed and brought to the evidence drop box per the directive of the Department of Corrections and Community Supervision ("DOCCS"). (*Id*., Ex. E, pp. 1, 16, 17, 24, 27, 28; Ex. C, pp. 40-41).

Officer Cornell authored a misbehavior report that charged Plaintiff with violating DOCCS' directives by possessing a weapon and an altered item. (*Id*., Ex. E, p. 19; Ex. C, pp. 63-65).  Plaintiff was afforded a disciplinary hearing as a result of the misbehavior charges. (*Id*., Ex. B, 53). Plaintiff was found guilty at his disciplinary hearing and sentenced to six months in the

2

"box" (Special Housing Unit). (*Id.*, Ex. B, pp. 53-54). Plaintiff never appealed the disciplinary charge decision. (*Id.*, p. 54). When asked *why* he never appealed the disciplinary charge decision, Plaintiff testified: "I don't know." (*Id.*).

Plaintiff was charged criminally as well, pleading guilty to promoting prison contraband in the first degree, a class D Felony, and agreed to a two to four-year prison sentence for that charge. (*Id.*, Ex. G, p. 6). Plaintiff's criminal defense counsel in that matter, Rome Canzano, indicated during Plaintiff's sentencing for that crime that Plaintiff had "accepted responsibility." (*Id.*, p. 7). Plaintiff had previously been charged with, and disciplined for, possessing a weapon at Elmira Correctional Facility prior to the subject incident on October 20, 2013. (*Id.*, Ex. F, pp. 1-2; Ex. B, pp. 24-25).

Prior to January 21, 2016, Plaintiff never had any issues with Officer Cornell and never filed any grievances against him. (*Id.*, Ex. B, pp. 21-22, 28). The only interaction Plaintiff recalls with Officer Cornell prior to January 21, 2016 is a random pat frisk Officer Cornell performed on Plaintiff prior to Plaintiff attending recreation in the yard months prior to the incident. (*Id.*, Ex. B, pp. 20-21). As of January 21, 2016, Officer Cornell was unaware of what portion of Plaintiff's sentence remained. (*Id.*, Ex. C, p. 55). Plaintiff has no opinion as to why Officer Cornell would have "set him up" with a weapon. (*Id.*, Ex. B, p. 28). Officer Cornell testified that he had no reason to "set up" Plaintiff with a weapon. (*Id.*, Ex. C, p. 69). In fact, Officer Cornell unequivocally denies planting any weapon on Plaintiff. (*Id.*, p. 68).

Plaintiff was familiar with the inmate grievance process at Auburn. (*Id.*, pp. 54, 55). Plaintiff was aware that if a grievance is denied, there is an appeal process. (*Id.*, p. 55). Prior to the January 21, 2016 incident, Plaintiff had successfully filed a grievance for a missing package on April 7, 2014. (Declaration of Cheryl Parmiter ["Parmiter Dec."], ¶8). However, Plaintiff

<u>admittedly</u> never filed a grievance complaining of the January 21, 2016 incident. (Cowan Dec., Ex. B, pp. 57). Auburn has no record that Plaintiff filed a grievance complaining of the January 21, 2016 incident. (Parmiter Dec., ⁋9). Plaintiff never appealed a grievance decision to the Central Office Review Committee regarding the alleged January 21, 2016 incident. (Declaration of Rachael Seguin ["Seguin Dec."], ⁋12).

While former Cayuga County Assistant District Attorney Brian Leeds claimed that Officer Cornell admitted to him on December 9, 2016 that he had planted a weapon on an inmate, a subsequent investigation completed by DOCCS' Office of Special Investigations found that any allegations that Officer Cornell planted a weapon on any inmates was unsubstantiated. (*Id*., Ex. J).

On December 23, 2016, Cayuga County District Attorney Jon Budelman wrote a letter to Cayuga County Court Judge Mark Fandrich, indicating that he would not oppose a motion by Plaintiff's counsel under New York Criminal Procedure Law §440 requesting that the Court vacate Plaintiff's guilty plea and sentence. (Cowan Dec., Ex. H). However, District Attorney Budelmann stated in his letter that he had no direct evidence that Officer Cornell placed contraband on Plaintiff. (*Id*.). Plaintiff's guilty plea for promoting prison contraband in the first degree was subsequently vacated. (*Id*., Ex. I).

## <u>STANDARD OF REVIEW</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "There is 'no genuine dispute as to any material fact' where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed

4

facts), *see Matsushita Elec. Indus, Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)." *Ortiz v. Annucci*, 2019 WL 1438006, at *7 (S.D.N.Y. 2019).

In determining whether a fact is genuinely disputed, a court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Ortiz*, 2019 WL at *7 (citing *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). "Nevertheless, to show a genuine dispute, the nonmoving party must provide 'hard evidence,' *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), 'from which a reasonable inference in [its] favor may be drawn,' *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R. B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997))." *Id.*

"'Conclusory allegations, conjecture, and speculation,' *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere 'scintilla of evidence in support of the [nonmoving party's] position,' *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is 'entitled to judgment as a matter of law' on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party 'show[s] – that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position].'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted).

## ARGUMENT

## I.    PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies.  *Ruggiero v. County of Orange*, 467 F.3d 170, 172-173 (2d Cir. 2006).  Specifically, the PLRA provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle,* 534 U.S. 516, 532 (2002); *see also Ruggiero*, 467 F.3d at 173.  This requirement is mandatory.  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  Failure to fully complete the administrative review process before commencing a federal lawsuit makes the complaint subject to dismissal.  *Read v. Calabrese*, 2015 U.S. Dist. LEXIS 38911, *12 (N.D.N.Y. 2015).

DOCCS maintains a three-tiered administrative review and appeals system for prisoner grievances. *See* N.Y. Comp. Codes R. & Regs. § 701.5. Prior to pursuing a § 1983 action in federal court, a prisoner in the DOCCS system must exhaust all three levels. *Henderson v. Annucci*, 2016 WL 3039687, at *3 (W.D.N.Y. 2016), *report and recommendation adopted*, 2016 WL 3031353 (W.D.N.Y. 2016). ""First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action." N.Y.C.R.R. tit. 7, at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. *Id*. at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. *Id*. §§701.5(b)(2)(i)-(ii). If the determination is unfavorable to

the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. *Id*. § 701.5(c)(1).

If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. *Id*. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." *Id*. § 701.5(d)(3)(ii).

<u>Only</u> after an inmate has properly exhausted all three levels of review, including receipt of a decision from CORC, may an inmate seek relief pursuant to Section 1983. *Cohen v. Welch*, 2017 WL 3311244, at *6 (N.D.N.Y. 2017), *report and recommendation adopted*, 2017 WL 3309713 (N.D.N.Y. 2017)(citing *Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009)).

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See, Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.* However, the Supreme Court has since eliminated the "special circumstances" exception. *See*, *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Although *Ross* abolished the "special circumstances" exception, the other two factors in *Hemphill* are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, 36 S. Ct. at 1858.

7

Indeed, pursuant to *Ross*, Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles v. Buchanan*, 2016 WL 4572321 at \*2 (2d Cir. 2016). An administrative procedure is "unavailable" when "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is 'so opaque that is [sic] becomes, practically speaking, incapable of use'; or (3) 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' *Riles, supra* (quoting *Ross*, 136 S. Ct. at 1859-60).

Because non-exhaustion is an affirmative defense, defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *Shakur v. Thomas,* 2018 WL 4635722, at \*21 (N.D.N.Y. 2018), *report and recommendation adopted,* 2018 WL 3217170 (N.D.N.Y. 2018). Plaintiff must then establish that the grievance procedure was unavailable to him. *Id., citing Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also McMillian v. Walters*, 2017 WL 8894737, at \*2 (N.D.N.Y. 2017).

Here, the only remaining claims in this matter are Plaintiff's First, Second and Third Claims in his Complaint. Under those claims, Plaintiff alleges that Officer Cornell planted a weapon on him, denying him the right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments and falsely arrested/imprisoned him under state law and the Fourth and Fourteenth Amendment.

It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions." *Thomas v. Delaney*, 2019 WL 4247807, at \*10 (N.D.N.Y. 2019), *report and recommendation adopted*, 2019 WL 4242268 (N.D.N.Y. 2019); *White v. Drake,* 2011 WL

4478988, at *3 (N.D.N.Y. 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit."). As already mentioned above, the United States Supreme Court has held that "the PLRA's exhaustion requirement applies to <u>*all inmate suits about prison life*</u>, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Williams v. King,* 56 F. Supp. 3d 308, 321 (S.D.N.Y. 2014), *order clarified,* 56 F. Supp. 3d 389 (S.D.N.Y. 2014), *aff'd in part, vacated in part,* 679 F. App'x 86 (2d Cir. 2017), and *aff'd*, 679 F. App'x 86 (2d Cir. 2017)(emphasis added).

In accordance with the well-established case law cited above, Plaintiff was required to first exhaust his administrative remedies by filing a grievance prior to initiating this lawsuit. However, Plaintiff outright *admitted* during his deposition that he did *not* file a grievance complaining that Officer Cornell had planted a weapon on him on January 21, 2016. (Cowan Dec., Ex. B, pp. 57, 58)[1]. He admitted that while he was in the Special Housing Unit following the incident, he never wrote <u>any grievances at all</u>. (*Id*., pp. 58-59). Auburn has no record that Plaintiff filed a grievance complaining of the January 21, 2016 incident, which corroborates Plaintiff's admission. (Parmiter Dec., ⁋9). Plaintiff never appealed any grievance decision to the Central Office Review Committee regarding the alleged January 21, 2016 incident. (Seguin Dec., ⁋12).

Because Defendant has carried his burden and demonstrated that Plaintiff has failed to satisfy the exhaustion requirements, the burden shifts to Plaintiff to establish that the inmate grievance procedure was "unavailable" to him at Auburn. However, Plaintiff cannot carry this burden. The grievance procedure was undeniably "available" to Plaintiff as required under *Ross,*

---

[1] Notably, Plaintiff also failed to allege in his Complaint that he filed a grievance or exhausted his administrative remedies. *See*, Dkt. No. 1.

*supra*. According to the Assistant Director of the Inmate Grievance Program for DOCCS, Auburn had a fully functioning inmate grievance process available at the time of the incident. (Seguin Dec., ¶11). Indeed, she stated that inmates at Auburn have had full access to the CORC by which to appeal from facility-level grievance determinations. *Id*.

Furthermore, Plaintiff admitted that he was familiar with the grievance process while at Auburn. (Cowan Dec., Ex. B, pp. 54, 55). In fact, he had filed a grievance at Auburn less than two years prior, complaining about a missing package. (Parmiter Dec., ¶8, Ex. A). Plaintiff has <u>never</u> made any allegations that prison administrators "thwarted" him from taking advantage of the grievance process in any way.

Consequently, Plaintiff has failed to properly exhaust his administrative remedies and he cannot show that the grievance procedure at Auburn was unavailable to him. Plaintiff's remaining claims against Defendant Cornell must be dismissed and the Complaint should be dismissed in its entirety, with prejudice. *See, Shakur,* 2018 WL at *22 (summary judgment granted on retaliation claim after defendants submitted evidence establishing Auburn had a fully functioning grievance process available, plaintiff failed to file a grievance alleging retaliation, and plaintiff failed to submit evidence that the grievance procedure was unavailable to him).

## II.   PLAINTIFF'S FALSE ARREST/FALSE IMPRISONMENT CLAIMS PURSUANT TO STATE LAW AND SECTION 1983 MUST BE DISMISSED

In the event that the Court declines to dismiss Plaintiff's claims on the grounds that he has failed to exhaust his administrative remedies, Plaintiff's First and Second claims for false arrest/false imprisonment must be dismissed for the reasons stated below.

As an initial matter, "[a] § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York Law." *Thompson v.*

*Hernandez*, 2020 WL 1066252, at *2 (E.D.N.Y. Mar. 5, 2020)(citing *Weyant*, 101 F.3d at 852 (internal citations omitted). In order to prove the elements of false arrest under New York law, a plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id., citing Weyant* at 853 (citation omitted).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Id., citing Weyant* at 852 (internal quotation marks and citation omitted). An officer has probable cause to arrest if he "has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime." *Id*., citing *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (citation omitted).

Here, Auburn Sgt. Steven Pyke authorized Officer Cornell to frisk cell D-4-37, which was Plaintiff's cell at that time. (Cowan Dec., Ex. E, pp. 1, 16; Ex. D, pp. 28-29). Sgt. Pyke ordered Officer Cornell to perform the frisk based on suspicion that he, Sgt. Pyke, had gathered. (*Id*., Ex. E, pp. 1, 16; Ex. D, pp. 28-29; Ex. C, p. 66). Suspicion to frisk an inmate can be gleaned from tips and confidential informants within the facility. (*Id*., Ex. D, p. 29; Ex. C, p. 65). Once Officer Cornell arrived at Plaintiff's cell, he pat frisked Plaintiff outside of his cell. (*Id*., Ex. B, p. 36; Ex. E, p. 16). According to Plaintiff, Officer Cornell told him that he had information that Plaintiff had a weapon. (*Id*., Ex. B, pp. 37-38).

During the pat frisk, Officer Cornell felt an unknown object in the inmate's buttocks area. (*Id*., Ex. E, pp. 1, 17, 18, 19, 25). Consequently, Sgt. Pyke authorized a strip frisk. (*Id*., Ex. E, p. 16). Plaintiff was strip frisked in D-block 4 and 5 center room. (*Id*.). Sgt. Pyke was present during the strip frisk. (*Id*., Ex. E, p.16; Ex. C, p. 54). During Plaintiff's strip frisk, Plaintiff voluntarily

surrendered a weapon from his buttocks area. (*Id.*, Ex. E, pp. 1, 16, 17). The weapon is described as a toothbrush handle sharpened to a point at one end, with a cloth handle, measuring eight inches by one half inch. (*Id.*, Ex. E, pp. 1, 16-19).

The weapon was bagged, labeled, photographed and brought to the evidence drop box per directive. (*Id.*, Ex. E, pp. 1, 16, 17, 24, 27, 28; Ex. C, pp. 40-41). The Cayuga County District Attorney's Office prosecuted Plaintiff for Promoting Prison Contraband in the First Degree and Plaintiff plead guilty to that charge. (Cowan Dec., Ex. G; Ex. K, pp. 22, 88-89).

Under New York Penal Law §205.25: "A person is guilty of promoting prison contraband in the first degree when: 1. He knowingly and unlawfully introduces any dangerous contraband into a detention facility; or 2. Being a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any dangerous contraband." N.Y. Penal Law §205.25. Consequently, based on his discovery of a weapon on Plaintiff's person, Defendant Cornell certainly had knowledge of "acts and circumstances sufficient to provide probable cause" to believe that Plaintiff had committed a crime, i.e. possessing dangerous contraband while confined in a detention facility.

Regardless, Plaintiff alleges that Defendant Cornell planted the weapon on his person and that he never actually possessed such a weapon. While the Second Circuit has yet to address this issue, *Jimenez v. City of N.Y.*, 2016 WL 1092617, at *1 (E.D.N.Y. 2016) provides an explanation on how to handle unsupported allegations of planting evidence. In *Jimenez*, police charged the plaintiff with the possession of a gun that they discovered hidden at his apartment. The plaintiff alleged that the police planted the gun and falsely arrested him. The Court dismissed plaintiff's false arrest claim, holding that "with the broad discovery tools that a plaintiff ha[d] at his disposal, he must come up with something more than a smidgen of circumstantial evidence to show that

there is genuine, not merely possible, basis for a jury to buy his theory. And there is no evidence of planting here at all." *Jimenez*, 2016 WL at *3.

The *Jimenez* decision is "consistent with a plethora of cases in this circuit." *Thompson*, 2020 WL at *2, citing *Apostol v. City of New York*, 2014 WL 1271201, at *6 (E.D.N.Y. 2014) ("Plaintiffs cannot withstand summary judgment by making unsubstantiated, convenient claims– for example, that someone must have planted the [drugs]"); *Bender v. Alvarez*, 2009 WL 112716, at *9 (E.D.N.Y. 2009)("Plaintiff fails to provide any evidence demonstrating that the evidence was planted in his residence except for his unsupported statement"); *Carlisle v. City of New York*, 2007 WL 998729, at *3 (S.D.N.Y. 2007)("Although plaintiff alleges that the detectives fabricated and planted evidence, he fails to offer even a scintilla of support for these allegations").

In *Thompson, supra*, the Court noted that Plaintiff did not "offer concrete evidence, despite discovery being closed, from which a reasonable juror could return a verdict in his favor. It is [plaintiff's] opinion that the police must have planted the [evidence]; however, the law requires [plaintiff] to **"come up with something more than a smidgen of circumstantial evidence to show that there was a genuine, not merely possible, basis for a jury to buy his theory."** (emphasis in original) *Thompson,* 2020 WL at *3 (citing *Jimenez*, 2016 WL 1092617, at *3).

Indeed, in general, unsupported allegations are insufficient to withstand a motion for summary judgment on false arrest claims. *See, Smith v. Webber*, 2020 WL 888016, at *5 (E.D.N.Y. Feb. 24, 2020)(plaintiff fails to provide any evidence to support his claims about defendant telling plaintiff false information, and it is these types of unsupported allegations that are insufficient to defeat a motion for summary judgement). A plaintiff's "unsupported, conclusory allegation that

someone must have planted the evidence because there is no other way it could have gotten [there]," is insufficient to create a genuine issue of material fact. *Carlisle*, 2007 WL at *3.

Here, as in the cases cited above, Plaintiff offers no evidence demonstrating that the evidence was planted on his person other than his unsupported allegations. Plaintiff admits that there were no witnesses to the initial pat frisk or the alleged planting of the weapon. (Cowan Dec., Ex. B, pp. 42-43). According to the contemporaneous memos written immediately following the incident, it was *Sgt. Pyke* who ordered the search based on suspicion he had gathered—which means that Officer Cornell did not even initiate the search himself. Further, according to the memos and the Unusual Incident Report, Sgt. Pyke was present for Plaintiff's pat frisk and strip frisk and did not observe Officer Cornell plant any weapon on Plaintiff. (*Id.*, Ex. D, p. 38). According to both Sgt. Pyke and Officer Cornell, Plaintiff voluntarily gave up the weapon. (*Id.*, Ex. E, pp. 16-17). Plaintiff has no evidence whatsoever to substantiate his claims that Officer Cornell planted the weapon on him, other than Plaintiff's own denial that the weapon was his.

While Plaintiff is sure to raise the fact that his promoting prison contraband charge was subsequently vacated, Defendant Cornell never told ADA Leeds, the prosecuting attorney, that he planted a weapon on Plaintiff. (Cowan Dec., Ex. K, pp. 90, 135-136). ADA Leeds never developed any evidence that Defendant Cornell had planted a weapon on Plaintiff. (*Id.*, p. 92). Furthermore, in a letter dated December 23, 2016, from Cayuga County District Attorney Jon Budelman to Cayuga County Court Judge Mark Fandrich, the District Attorney indicates that while he would not oppose a motion by Plaintiff's counsel under Criminal Procedure Law §440 to vacate Plaintiff's guilty plea and sentence, he had no direct evidence that Officer Cornell placed contraband on Plaintiff. (*Id.*, Ex. H). The Department of Corrections and Community Supervision's Office of Special Investigations performed their own investigation and found that

14

any allegations that Officer Cornell planted a weapon on any inmates were unsubstantiated. (*Id.*, Ex. J).

Moreover, Officer Cornell vehemently denies planting any weapon on Plaintiff or having any reason to "set him up". (Cowan Dec., Ex. C, pp. 68-69). At the time of the frisk, Officer Cornell was unaware of what portion of Plaintiff's sentence remained. (*Id.*, Ex. C, p. 55). Although Plaintiff alleges that Officer Cornell "set him up" with the subject weapon, Plaintiff has no opinion as to *why* Officer Cornell would have "set him up" with a weapon. (*Id.*, Ex. B, p. 28). Prior to January 21, 2016, Plaintiff never had any issues with Officer Cornell and never filed any grievances against him. (*Id.*, pp. 21-22, 28).

And although Plaintiff was charged with violating DOCCS' rules and regulations regarding possession of a weapon (Cowan Dec., Ex. E, p. 19) and subsequently found guilty of those charges, Plaintiff never appealed that decision. (*Id.*, Ex. B, pp. 53-54). When asked during his deposition why he did not appeal the disciplinary decision, Plaintiff replied: "I don't know." (*Id.*, p. 54). Finally, it should also be noted that Plaintiff had previously been charged with, and disciplined for, possessing a weapon at Elmira Correctional Facility prior to the subject incident on October 20, 2013. (*Id.*, Ex. F, pp. 1-2; Ex. B, pp. 24-25).

The record here is devoid of evidence, admissible or otherwise, that supports Plaintiff's conclusory assertion that he was framed by Officer Cornell. In accordance with the case law cited above, Plaintiff has failed to come forth with <u>anything</u> "more than a smidgen of circumstantial evidence to show that there [is] a genuine, not merely possible, basis for a jury to buy his theory." For those reasons, Plaintiff's First and Second Claims should be dismissed.

### III.   PLAINTIFF'S DUE PROCESS CLAUSE CLAIMS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS MUST BE DISMISSED

In the event that the Court declines to dismiss Plaintiff's claims on the grounds that he has failed to exhaust his administrative remedies, Plaintiff's Due Process Clause claims should still be dismissed. Under Plaintiff's Third Claim, he alleges that Defendant Cornell created false evidence, forwarded it to the Cayuga County District Attorney's Office and violated Plaintiff's Due Process rights to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments. (Dkt. No. 1, pp. 8, 9).

First, Plaintiff cannot sustain a Fifth Amendment Due Process Claus claim, as that Amendment is only applicable to the federal government. *See, Seidman v. Colby*, No. 118CV202TJMCFH, 2019 WL 1060643, at *4 (N.D.N.Y. Mar. 6, 2019)(The Fifth Amendment is only applicable to the federal government, not state governments)(*citing Dusenbery v. United States*, 534 U.S. 161, 167 (2002)).  Indeed, "[a]ny due process rights plaintiff enjoys as against state government officials ... arise solely from the Fourteenth Amendment due process clause." *Id.*, citing *Maddox v. Fowler*, 2015 WL 4366222 at *10 (N.D.N.Y. 2015)). Plaintiff has not brought his claim against the federal government, so his Fifth Amendment claim must fail.

Second, Plaintiff fails to delineate in his Complaint precisely how his Sixth Amendment due process rights were violated. (Dkt. No. 1, p. 9). However, in his Responses to Defendant's First Set of Interrogatories, Plaintiff does specify the basis for his Sixth Amendment claim. He states that he was a "victim of false arrest, a violation of the Fourth Amendment and the Sixth Amendment of the U.S. Constitution, which state that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed…and to be informed of the nature and cause of the accusations; to be confronted with the witnesses against him; to have compulsory process for

obtaining witnesses in his favor and to have the assistance of counsel for his defense." (Cowan Dec., Ex. A, ⁋8).

As mentioned above, any due process rights plaintiff enjoys as against state government officials arise solely from the Fourteenth Amendment due process clause. *See also, Cilauro v. Duff*, 2009 WL 1405422, at *7 (N.D.N.Y. 2009), *amended on reconsideration in part,* 2009 WL 2259142 (N.D.N.Y. 2009)(citing *Ambrose v. City of New York,* 2009 WL 890106, at * 10 (S.D.N.Y. 2009)(holding that any due process rights the plaintiff enjoys against state governmental officials arise from the Fourteenth Amendment due process clause).

Furthermore, it is well settled that the Sixth Amendment pertains to criminal prosecutions and the right to a speedy trial with process for obtaining witnesses and acquiring representation. *See*, U.S. Const. amend. IV. Because this case is civil and not criminal in nature and fails to assert conduct by any federal employee, official, or entity, the Sixth Amendment does not apply. *See, Perez v. Fischer,* 2012 WL 1098423, at *18 (N.D.N.Y. 2012), *report and recommendation adopted,* 2012 WL 1088486 (N.D.N.Y. 2012).

Third, with respect to Plaintiff's remaining Fourteenth Amendment due process claim, "[i]n order to succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." *Bennett v. Vidal,* 267 F. Supp. 3d 487, 498 (S.D.N.Y. 2017)(citing *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279–80 (2d Cir. 2016)).

Where the only evidence that a correction officer falsified evidence is conclusory statements or speculation made by the plaintiff, Courts have granted summary judgment in favor

of the defendant officer. *See, Greene v. City of N.Y.,* 2017 WL 1030707, at *25 (E.D.N.Y. 2017), *appeal    filed*,   (2d    Cir.    2017)(granting summary judgment on    a denial of the right to a fair trial claim because the contention that officers deliberately falsified evidence was based on "sheer speculation, and [did] not create a material issue of fact for trial"); *Walker v. Keyser*, 2001 WL 1160588, at *7 (S.D.N.Y. 2001), *as amended* (Oct. 17, 2001), *aff'd sub nom. Walker v. Goord*, 131 F. App'x 775 (2d Cir. 2005); *Henson v. Gagnon,* No. 913CV0590GTSTWD, 2015 WL 9809874, at *11 (N.D.N.Y. 2015), *report and recommendation adopted*, 2016 WL 204494 (N.D.N.Y. 2016); *see also, Lauderdale v. City of New York,* 2018 WL 1413066, at *8 (S.D.N.Y. 2018)(a mere difference in the testimony of the plaintiff and the officers about what occurred on the day of the arrest is not sufficient evidence to create a genuine dispute of material fact as to whether defendant intentionally falsified information or fabricated evidence.)

Indeed, Courts have held that a failure to substantiate a claim of evidence fabrication with some evidence *other than* plaintiff's denials leads to the conclusion that the claim must be denied because there is no material issue in dispute. *Demosthene v. City of New York,* 2018 WL 10072931, at *7 (E.D.N.Y. 2018), *report and recommendation adopted*, 2019 WL 3992868 (E.D.N.Y. Aug. 16, 2019).

In *Henson, supra*, plaintiff alleged that an officer planted evidence in his cell during a cell search and filed a false misbehavior report in retaliation for a grievance plaintiff had filed against correctional facility staff. The officer denied plaintiff's claim that he planted evidence and filed a false misbehavior report. In addition, according to the officer, he had not been in plaintiff's cell prior to the search. The officer argued that he acted in accordance with DOCCS policy when he found damage in plaintiff's cell, took photographs, and drafted the Misbehavior Report that was approved by a supervisor. The Court found that the record was "devoid of evidence, admissible or

otherwise," that supported plaintiff's conclusory assertion that he was framed by the officer and that the Misbehavior Report was based upon evidence planted by the officer. Citing *Jeffreys v. City of New York,* 426 F.3d 554 (2d Cir. 2005), the Court noted that nonmoving parties may not rely on "conclusory allegations or unsubstantiated speculation" to defeat summary judgment. Ultimately, the Court dismissed plaintiff's retaliation claim.

*See also, Hewitt v. The City of New York,* 2012 WL 4503277 at *6, *11 (E.D.N.Y. 2012)(granting summary judgment because the "[p]laintiff points ... to no evidence of ill will or malice on the part of the [officer]" and "no arguable motivation to fabricate"); *Greene,* 2017 WL at *25 (granting summary judgment on a denial of the right to a fair trial claim because the contention that officers deliberately falsified evidence was based on "sheer speculation, and [did] not create a material issue of fact for trial"); *Bennett,* 267 F. Supp. 3d at 498.

Here, as stated above, Plaintiff offers no evidence demonstrating that the evidence was planted on his person other than his unsupported, conclusory allegations. Plaintiff admits that there were no witnesses to the initial pat frisk or the alleged planting of the weapon. (Cowan Dec., Ex. B, pp. 42-43). According to the contemporaneous memos written immediately following the incident, it was *Sgt. Pyke* who ordered the search based on suspicion he had gathered—which means that Officer Cornell did not even initiate the search himself. Further, according to the memos and the Unusual Incident Report, Sgt. Pyke was present for Plaintiff's pat frisk and strip frisk and did not observe Officer Cornell plant any weapon on Plaintiff. (*Id.,* Ex. D, p. 38). According to both Sgt. Pyke and Officer Cornell, Plaintiff voluntarily gave up the weapon. (*Id.,* Ex. E, pp. 16-17). Plaintiff has no evidence whatsoever to substantiate his claims that Officer Cornell planted the weapon on him, other than Plaintiff's own denial that the weapon was his.

While Plaintiff is sure to raise the fact that his promoting prison contraband charge was

subsequently vacated, Defendant Cornell never told ADA Leeds, the prosecuting attorney, that he planted a weapon on Plaintiff. (Cowan Dec., Ex. K, pp. 90, 135-136). ADA Leeds never developed any evidence that Defendant Cornell had planted a weapon on Plaintiff. (*Id*., p. 92). Furthermore, in a letter dated December 23, 2016, from Cayuga County District Attorney Jon Budelman to Cayuga County Court Judge Mark Fandrich, the District Attorney indicates that while he would not oppose a motion by Plaintiff's counsel under Criminal Procedure Law §440 to vacate Plaintiff's guilty plea and sentence, he had no direct evidence that Officer Cornell placed contraband on Plaintiff. (*Id*., Ex. H). The Department of Corrections and Community Supervision's Office of Special Investigations performed their own investigation and found that any allegations that Officer Cornell planted a weapon on any inmates were unsubstantiated. (*Id*., Ex. J).

Moreover, Officer Cornell vehemently denies planting any weapon on Plaintiff or having any reason to "set him up". (Cowan Dec., Ex. C, pp. 68-69). At the time of the frisk, Officer Cornell was unaware of what portion of Plaintiff's sentence remained. (*Id*., Ex. C, p. 55). Although Plaintiff alleges that Officer Cornell "set him up" with the subject weapon, Plaintiff has no opinion as to *why* Officer Cornell would have "set him up" with a weapon. (*Id*., Ex. B, p. 28). Prior to January 21, 2016, Plaintiff never had any issues with Officer Cornell and never filed any grievances against him. (*Id*., pp. 21-22, 28). There is absolutely no evidence in the record that Officer Cornell harbored any ill will or malice towards Plaintiff and likewise, there is no evidence as to any "arguable motivation" for Officer Cornell to fabricate a contraband charge against Plaintiff.

And although Plaintiff was charged with violating DOCCS' rules and regulations regarding possession of a weapon (Cowan Dec., Ex. E, p. 19) and subsequently found guilty of those charges,

Plaintiff never appealed that decision. (*Id.*, Ex. B, pp. 53-54). When asked during his deposition why he did not appeal the disciplinary decision, Plaintiff replied: "I don't know." (*Id.*, p. 54). Finally, it should also be noted that Plaintiff had previously been charged with, and disciplined for, possessing a weapon at Elmira Correctional Facility prior to the subject incident on October 20, 2013. (*Id.*, Ex. F, pp. 1-2; Ex. B, pp. 24-25).

The record here is devoid of evidence, admissible or otherwise, that supports Plaintiff's conclusory assertion that he was framed by Officer Cornell. In accordance with the case law cited above, Plaintiff's Third claim must be dismissed.

## IV.    PLAINTIFF'S EMOTIONAL DISTRESS CLAIMS ARE BARRED BY THE PLRA

Section 1997e(e) of the PLRA provides that "no Federal civil action may be brought by a prisoner confined in... correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury...." *Dash v. Mayers*, 2020 WL 1946303, at *6 (S.D.N.Y. 2020)(citing 42 U.S.C. § 1997(e)). This includes "claims alleging constitutional violations." *Id.*, citing *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002).  In the absence of physical injury allegations, a prisoner's claims should be dismissed insofar as he seeks compensatory damages for constitutional violations. *See, Dash*, 2020 WL at 6, (citing *Toliver v. City of New York*, 530 F. App'x 90, 93 n.2 (2d Cir. 2013) ("[A] prisoner may not recover for mental or emotional injury suffered while in custody without prior showing of physical injury .") (internal quotation marks and citation omitted); *see also Leon v. Johnson*, 96 F. Supp. 2d 244, 250 (W.D.N.Y. 2000) (inmate's right to privacy claim based on lack of Spanish-speaking medical staff at prison which forced prisoner to discuss his medical condition to unauthorized persons "appears to be barred by § 1997e(e)'s physical-injury requirement"); *Washington v. Piper,* 2019

WL 6343516, at *5 (S.D.N.Y. 2019)(plaintiff did not allege any physical injury resulting from the claimed deprivation of his constitutional rights  and only alleged emotional harm).

While the PLRA does not define "physical injury," courts have interpreted that the requisite injury must be more than *de minimis*. *See, e.g., Warren v. Westchester Cty. Jail*, 106 F. Supp. 2d 559, 570 (S.D.N.Y. 2000). That is because the purpose of the PLRA's physical injury requirement is "to weed out frivolous claims where only emotional injuries are alleged." *Cox v. Malone*, 199 F. Supp. 2d 135, 140 (S.D.N.Y. 2002), aff'd, 56 F. App'x 43 (2d Cir. 2003).

Confinement, by itself, is not enough to fulfill the physical injury requirement. *See, Wilson v. Phoenix House,* 2011 WL 3273179, at *3 (S.D.N.Y. 2011)(plaintiff was barred from requesting compensatory damages for her Equal Protection claim and confinement not enough, by itself, to fulfill physical injury requirement); *see also, Edwards v. Horn,* 2012 WL 760172, at *22 (S.D.N.Y. 2012).

Here, in the event that the Court declines to dismiss Plaintiff's Complaint in its entirety, Plaintiff cannot demonstrate that he suffered <u>any</u> physical injury that is sufficient under the PLRA. In fact, he admitted that he is not claiming any physical injuries as a result of this incident. (Cowan Dec., Ex. B, pp. 77-78). Thus, in accordance with the case law cited above, Plaintiff cannot seek compensatory damages for any of the remaining alleged constitutional violations in his Complaint.[2]

## V.     DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY

"Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there

---

[2] Defendant acknowledges that the PLRA does not bar Plaintiff from recovering punitive or nominal damages. *Holland v. City of New York,* 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016)(citing *Thompson,* 284 F.3d at 418).

was 'arguable probable cause' to arrest." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 569 (S.D.N.Y. 2015)(citing *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004)). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Walczyk v. Rio,* 496 F.3d 139, 163 (2d Cir. 2007)(internal quotation marks omitted); *see also, Amore v. Novarro,* 624 F.3d 522, 536 (2d Cir. 2010).

Accordingly, "the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; arguable probable cause will suffice to confer qualified immunity for the arrest." *Deanda, supra*, citing *Escalera,* 361 F.3d at 742 (internal quotation marks omitted). To determine whether an officer's belief was "objectively reasonable," the court looks to the "information possessed by the officer at the time of the arrest, but [does] not consider [his] subjective intent, motives, or beliefs." *Gilliard v. City of New York,* 2013 WL 521529, at *9 (E.D.N.Y. 2013). "This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* Even in situations in which an officer reasonably but mistakenly concludes that probable cause exists, "the officer is nonetheless entitled to qualified immunity." *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002).

Here, given Defendant Cornell's discovery of the weapon in Plaintiff's possession, there was arguable probable cause to arrest Plaintiff for promoting prison contraband in the first degree. Consequently, Defendant Cornell is entitled to qualified immunity.

## <u>CONCLUSION</u>

WHEREFORE, based upon the foregoing reasons, Defendant respectfully requests that the Court grant his motion to dismiss Plaintiff's Complaint as against Defendant Cornell with prejudice, and for other and further relief as the Court deems just and proper.

Dated:      Syracuse, New York
              August 31, 2020

                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        Attorney for Defendant Cornell
                                        300 S. State Street, Suite 300
                                        Syracuse, New York 13202

                                        By: _____/s_____

                                        Aimee Cowan, Esq.
                                        Assistant Attorney General
                                        Bar Roll No. 516178
                                        Telephone:    (315) 448-4800
                                        Fax: (315) 448-4853
                                        Email: aimee.cowan@ag.ny.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 31, 2020, she filed Defendant Cornell's

Motion for Summary Judgment by electronically filing with the Clerk of the Court herein, using the

CM/ECF system, which is understood to have delivered a copy electronically to the following:

      Scott Rynecki, Esq.
      Rubenstein & Rynecki, Esqs.
      16 Court Street, Suite 1717
      Brooklyn, New York 11241


Dated:      Syracuse, New York
          August 31, 2020

                       LETITIA JAMES
                       Attorney General of the State of New York
                       Attorney for Defendant Cornell
                       300 S. State Street, Suite 300
                       Syracuse, New York 13202

                       By: _____/s_____

                       Aimee Cowan, Esq.
                       Assistant Attorney General
                       Bar Roll No. 516178
                       Telephone:   (315) 448-4800
                       Fax: (315) 448-4853
                       Email: aimee.cowan@ag.ny.gov