UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DONNESIA BROWN,

                                Plaintiff,

                                                                             9:17-CV-1036
                -against-                                       (MAD/ATB)

NEW YORK STATE, THE NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION, CORRECTIONS
OFFICER MATTHEW CORNELL, Individually and in
his Official Capacity,

                                Defendants.
-------------------------------------------------------------------X

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS PURSUANT TO LOCAL RULE 7.1(a)(3)

Pursuant to Rule 7.1(a)(3) of the Local Rules of this Court, Plaintiff, Donnesia Brown ("Plaintiff"), responds to Defendant Officer Matthew Cornell ("Defendant"), statement of material facts as follows:

1.      Plaintiff was convicted in 2011 of Robbery in the Second Degree.

<u>Plaintiff's response</u>: Admitted.

2.      All claims in this matter arose out of Auburn Correctional Facility ("Auburn"), where Plaintiff was incarcerated as a result of his felony convictions.

<u>Plaintiff's response</u>: Admitted.

3.      Approximately a week prior to the incident that is the subject of this lawsuit, Plaintiff was involved in a fight with another inmate, in which the other inmate cut Plaintiff with an unknown weapon.

<u>Plaintiff's response</u>: Admitted, however this is not a material fact of the subject case.

4.	On January 21, 2016, Auburn Sgt. Steven Pyke authorized Officer Cornell to frisk cell D-4-37, which was Plaintiff's cell at that time.

Plaintiff's response: Admitted that this was Sgt. Pyke's testimony and what is contained in the report, however it is disputed that this the strip frisk of the Plaintiff was actually authorized. A fact cannot be undisputed simply because a self-serving report and declaration makes the claim.

5.	As part of Officer Cornell's job duties, Officer Cornell was frequently asked to assist supervisors with tasks such as searching cells.

Plaintiff's response: Admitted that this was Officer Cornell's testimony only. However, a fact cannot be undisputed simply because a self-serving report and declaration makes the claim.

6.	Sgt. Pyke ordered Officer Cornell to perform the frisk based on information that he, Sgt. Pyke, had gathered.

Plaintiff's response: Admitted that this was Sgt. Pyke and Officer Cornell's testimony and what is contained in the report, however it is disputed that this the strip frisk of the Plaintiff was actually authorized. Sgt. Pyke testified that he could not positively say what led to the frisk of Plaintiff. (Cowan Dec. Ex. D, p. 29, 32) A fact cannot be undisputed simply because a self-serving report and declaration makes the claim.

7.	Suspicion to frisk an inmate and/or his cell can be gleaned from tips and confidential informants within the facility.

Plaintiff's response: Admitted that this was Sgt. Pyke and Officer Cornell's testimony, however the basis for the subject strip frisk of the Plaintiff is contested. Further, Sgt. Pyke testified that he could not positively say what led to the frisk of Plaintiff. (Cowan Dec. Ex. D, p. 29, 32) A fact cannot be undisputed simply because a self-serving report and declaration makes the claim.

8. Once Officer Cornell arrived at Plaintiff's cell, he pat frisked Plaintiff outside of his cell.

Plaintiff's response: Admitted.

9. According to Plaintiff, Officer Cornell told him that he had information that Plaintiff had a weapon.

Plaintiff's response: Admitted that Plaintiff testified that is what Officer Cornell said.

10. In order to perform a strip frisk of an inmate, a Correction Officer must get authorization from a supervisor.

Plaintiff's response: Admitted that this was Officer Cornell's testimony. However, it is contested in that it cannot be undisputed simply because a self-serving declaration makes the claim.

11. On January 1, 2016, after Officer Cornell performed a pat frisk on Plaintiff, Sgt. Pyke authorized Officer Cornell to strip frisk Plaintiff.

Plaintiff's response: Admitted that a pat frisk was conducted. However, it is contested whether Sgt. Pyke actually authorized the strip frisk is an issue of fact that cannot be undisputed simply because a self-serving declaration makes the claim. Further, Sgt. Pyke testified that he could not positively say what led to the frisk of Plaintiff. (Cowan Dec. Ex. D, p. 29)

12. Plaintiff was strip frisked in D-block, 4 and 5 center room.

Plaintiff's response: Admitted that the Unusual Incident states this however Plaintiff's specific testimony was that the strip search occurred in a room behind the catwalk in the middle behind the cells. (Cowan Dec. Ex. B, p. 40)

13. Sgt. Pyke was present during the strip frisk.

Plaintiff's response: Admitted that this was Sgt. Pyke and Officer Cornell's testimony and what is contained in the report, however it is disputed that the strip frisk of the Plaintiff was actually

3

authorized. Further, Sgt. Pyke testified that he did not specifically recall observing the strip frisk, or specifically being inside the D block 4 and 5 center room at the time the search commenced, or whether or not there were any other Officers present during the frisk. (Cowan Dec. Ex. D, p. 30-32) A fact cannot be undisputed simply because a self-serving report and declaration makes the claim.

14.   During Plaintiff's strip frisk, a weapon was recovered.

Plaintiff's response: Denied. Whether or not a weapon was recovered during Plaintiff's strip frisk is the very material issue and dispute of this case. It is therefore contested. This is a material issue of fact that cannot be undisputed simply because a self-serving declaration makes the claim. Further, Sgt. Pyke testified that he could not specifically recall if an ice pick type weapon was recovered during the strip frisk. (Cowan Dec. Ex. D, p. 30) Additionally it is Plaintiff's testimony that he was sitting in his cell when he was rushed by Officer Cornell and another unknown Officer. His hands were grabbed and he is pulled out of his cell and patted down. He was thereafter handcuffed and walked to a room in the middle of the gallery and made to strip. He was then asked by Officer Cornell if he had a weapon. He replied that he did not and Officer Cornell then said, "you have one now" and Officer Cornell opened a cloth revealing a sharpened toothbrush. Plaintiff testified that Officer Cornell then said, "this is nothing personal. If it was we'd be fighting." (Cowan Dec. Ex. B, pp.34-35, 39)

15.   The weapon is described as a toothbrush handle sharpened to a point at one end, with a cloth handle, measuring eight inches by one half inch.

Plaintiff's response: Admitted that this is how the weapon was described, however it is disputed that this weapon was actually recovered during the strip frisk of the Plaintiff. Further, Sgt. Pyke testified that he could not specifically recall if an ice pick type weapon was recovered

during the strip frisk. (Cowan Dec. Ex. D, p. 30) A fact cannot be undisputed simply because a self-serving report and declaration makes the claim. Additionally, Plaintiff testified that Officer Cornell produced a "sharpened toothbrush" type weapon from a piece of cloth and stated that he did not know where he got it from. (Cowan Dec. Ex. B, pp. 39, 41)

16. Sgt. Pyke testified that he was present for the strip frisk and would have known if there was any malfeasance during the frisk.

Plaintiff's response: Admitted that this was Sgt. Pyke's testimony, however a fact cannot be undisputed simply because a self-serving declaration makes the claim. Additionally, Sgt. Pyke testified that he did not specifically recall observing the strip frisk, or specifically being inside the D block 4 and 5 center room at the time the search commenced, or whether or not there were any other Officers present during the frisk, or if an ice pick type weapon was recovered during the strip frisk. (Cowan Dec. Ex. D, p. 30-32)

17. Sgt. Pyke did not observe Officer Cornell plant any weapon on Plaintiff.

Plaintiff's response: Admitted that this was Sgt. Pyke's testimony, however a fact cannot be undisputed simply because a self-serving declaration makes the claim. Sgt. Pyke also testified that he did not specifically recall observing the strip frisk, or specifically being inside the D block 4 and 5 center room at the time the search commenced, or whether or not there were any other Officers present during the frisk, or if an ice pick type weapon was recovered during the strip frisk. (Cowan Dec. Ex. D, p. 30-32)

18. The weapon was bagged, labeled, photographed and brought to the evidence drop box, per the directive of the Department of Corrections and Community Supervision.

Plaintiff's response: Admitted that a weapon was bagged, labeled, photographed and brought to the evidence drop box.

19. Prior to January 21, 2016, Plaintiff never had any issues with Officer Cornell and never filed any grievances against him.

Plaintiff's response: Admitted.

20. The only interaction Plaintiff recalls with Officer Cornell prior to January 21, 2016 is a random pat frisk Officer Cornell performed on Plaintiff prior to Plaintiff attending recreation in the yard months prior to the incident.

Plaintiff's response: Admitted.

21. Although Plaintiff alleges that Officer Cornell "set him up" with the subject weapon, Plaintiff has no opinion as to *why* Officer Cornell would have "set him up" with a weapon.

Plaintiff's response: Admitted that this was Plaintiff's testimony.

22. At the time of the frisk, Officer Cornell was unaware of what portion of Plaintiff's sentence remained.

Plaintiff's response: Admitted that this is Officer Cornell's testimony however this is a fact that cannot be undisputed simply because a self-serving declaration makes the claim.

23. Officer Cornell authored a misbehavior report that charged Plaintiff with violating DOCCS' directives.

Plaintiff's response: Admitted.

24. Plaintiff was afforded a disciplinary hearing as a result of the weapons charge.

Plaintiff's response: Admitted. At Plaintiff's Tier III Disciplinary Hearing held on January 28, 2016 Plaintiff pled "Not Guilty" to the weapon/contraband charges against him. (Rynecki Dec. Ex. 2, p. 8)

25. Plaintiff was found guilty at his disciplinary hearing and sentenced to six months in the "box".

Plaintiff's response: Admitted.

26. Plaintiff never appealed the disciplinary charge decision.

Plaintiff's response: Admitted. Plaintiff testified that it was his belief that if he filed a grievance it would be thrown in the garbage. (Cowan Dec. Ex. B, p. 57)

27. When asked *why* he never appealed the disciplinary charge decision, Plaintiff testified: "I don't know."

Plaintiff's response: Admitted. Plaintiff testified that it was his belief that if he filed a grievance it would be thrown in the garbage. (Cowan Dec. Ex. B, p. 57)

28. Auburn had a fully functioning inmate grievance process available at the time of the incident.

Plaintiff's response: Admitted that Auburn had an inmate grievance process however whether it was "fully functioning" calls for a legal conclusion and it is therefore contested.

29. Plaintiff was familiar with the inmate grievance process at Auburn.

Plaintiff's response: Admitted.

30. Plaintiff was aware that if a grievance is denied, there is an appeal process.

Plaintiff's response: Admitted. Plaintiff testified that it was his belief that if he filed a grievance it would be thrown in the garbage. (Cowan Dec. Ex. B, p. 57)

31. Prior to the January 21, 2016 incident, Plaintiff had successfully filed a grievance for a missing package on April 7, 2014.

Plaintiff's response: Admitted, however this is not a material fact of the subject case.

32. However, Plaintiff admittedly never filed a grievance complaining of the January 21, 2016 incident.

Plaintiff's response: Admitted. Plaintiff testified that it was his belief that if he filed a grievance it would be thrown in the garbage. (Cowan Dec. Ex. B, p. 57)

33. Auburn has no record that Plaintiff filed a grievance complaining of the January 21, 2016 incident.

Plaintiff's response: Admitted.

34. Plaintiff never appealed a grievance decision to the Central Office Review Committee regarding the alleged January 21, 2016 incident.

Plaintiff's response: Admitted. Plaintiff testified that it was his belief that if he filed a grievance it would be thrown in the garbage. (Cowan Dec. Ex. B, p. 57)

35. Cayuga County Assistant District Attorney Brian Leeds prosecuted Plaintiff for the promoting prison contraband charge.

Plaintiff's response: Admitted.

36. Defendant Cornell never told ADA Leeds that he planted a weapon on Plaintiff.

Plaintiff's response: Admitted that this was former ADA Leeds' testimony.

37. ADA Leeds never developed any evidence that Defendant Cornell had planted a weapon on Plaintiff.

Plaintiff's response: Denied. See Letter of Cayuga County District Attorney Jon Budelmann, generally, which states that "Pursuant to our legal and ethical obligations of disclosure, we have recently learned of an infirmity regarding the credibility of our main witness in the case. Corrections Officer Matthew Cornell. Specifically, we have credible evidence that that Officer Cornell placed a contraband weapon on another inmate at Auburn Correctional Facility…" And further states, "given the severity of the conduct itself and the fact that the prosecution was sustained almost entirely on Officer Cornell's testimony regarding the search of the defendant and

the recovery of the contraband item, we no longer have confidence in the correctness of the conviction." (Cowan Dec. Ex. H)

38.     As a result of the January 21, 2016 incident, Plaintiff plead guilty to promoting prison contraband in the first degree, a class D felony, and agreed to a two to four-year prison sentence for that charge.

Plaintiff's response: Admitted, however Plaintiff testified that he pled guilty because he felt that he had no choice in the matter. He stated that he was facing the potential of life imprisonment or a two to four year plea arrangement and went on to say that he "wasn't spending life for something that I didn't do." (Cowan Dec. Ex. B, p. 65-66)

39.     Plaintiff's criminal defense counsel in that matter, Rome Canzano, indicated during Plaintiff's sentencing for that crime that Plaintiff had "accepted responsibility."

Plaintiff's response: Admitted, however Plaintiff testified that he pled guilty because he felt that he had no choice in the matter. He stated that he was facing the potential of life imprisonment or a two to four year plea arrangement and went on to say that he "wasn't spending life for something that I didn't do." (Cowan Dec. Ex. B, p. 65-66)

40.     On December 23, 2016, Cayuga County District Attorney Jon Budelmann wrote a letter to Cayuga County Court Judge Mark Fandrich, indicating that he would not oppose a motion by Plaintiff's counsel under Criminal Procedure Law §440 to vacate Plaintiff's guilty plea and sentence.

Plaintiff's response: Admitted. In fact, the letter states that the Cayuga County District Attorney's Office would join any motion to dismiss the indictment in the interest of justice. (Cowan Dec. Ex. H)

41. However, District Attorney Budelmann stated in his December 23, 2016 letter that he had no direct evidence that Officer Cornell placed contraband on Plaintiff.

Plaintiff's response: Admitted. However, the same letter states that "Pursuant to our legal and ethical obligations of disclosure, we have recently learned of an infirmity regarding the credibility of our main witness in the case. Corrections Officer Matthew Cornell. Specifically, we have credible evidence that that Officer Cornell placed a contraband weapon on another inmate at Auburn Correctional Facility…" And further states, "given the severity of the conduct itself and the fact that the prosecution was sustained almost entirely on Officer Cornell's testimony regarding the search of the defendant and the recovery of the contraband item, we no longer have confidence in the correctness of the conviction." (Cowan Dec. Ex. H)

42. Plaintiff's guilty plea for promoting prison contraband in the first degree was subsequently vacated.

Plaintiff's response: Admitted. By Order dated January 17, 2017 by Cayuga County Court Judge Mark Fandrich the judgment of conviction entered against him on October 11, 2016 for possessing prison contraband in the first degree was vacated, the indictment was dismissed in the furtherance of justice with prejudice without leave to re-present and Plaintiff was ordered discharged from custody forthwith.

43. The Department of Corrections and Community Supervision's Office of Special Investigations found that any allegations that Officer Cornell planted a weapon on any inmates were unsubstantiated.

Plaintiff's response: Admitted, however The Department of Corrections and Community Supervision's Office of Special Investigations substantiated allegations against Officer Cornell that various contraband items and potential inmate style weapons were found in Officer Cornell's

personal locker and vehicle. Officer Cornell admitted to the Office of Special Investigations to finding various inmate style cutting type weapons in common areas of the facility when questioned under oath. Further, upon conducting a search of Officer Cornell's assigned locker the Office of Special Investigations learned that Officer Cornell used a separate locker and while his assigned locker only contained a coat hanger, the unassigned locker contained an employee's manual, a 2017 calendar book, a contract book, numerous pay stubs belonging to Officer Cornell, a baton with no identification number, a personal jacket, a pair of black Carhartt gloves, a state DOCCS knit winter hat, a blue short-sleeve work shirt, a plastic bag with various size screws and washers, a broken set of inmate nail clippers, a large metal spoon with brown residue, a broken pair of tweezers, a broken pair of large toenail clippers, a lever from a small pair of nail clippers, a quarter, an electric motor with red wire, three straightened heavy staples, electric circuit tape an empty evidence bag with a date of June 13, 2014 stuck to a "Request for test of suspected contraband drugs", also dated June 13, 2014, with inmate information written on it, that states "positive for heroin". Upon a search of Officer Cornell's personal vehicle OSI recovered a Weatherby 30-06 caliber rifle with a scope and five rounds attached to the stock, an additional nineteen rounds in two separate ammunition boxes, half of a jig saw blade and a thin metallic object with a black tape handle. (Rynecki Dec. Ex.1) Officer Cornell's "explanation" for the contraband found during the OSI search in both the locker and his vehicle was that he would take them to his home to dispose of them in his garbage. Officer Cornell provided no explanation given to why they remained in his locker or vehicle and did not dispose of them in Auburn Correctional Facility's evidence drop box. (Rynecki Dec. Ex. 1)

44.     Officer Cornell denies planting any weapon on Plaintiff or any other Auburn inmates.

11

Plaintiff's response: Admitted that this was Officer Cornell's testimony however this is contested. ADA Brian Leeds met with Officer Cornell on December 9, 2016 for preparation of testimony in an upcoming unrelated trial at which time Officer Cornell admitted to ADA Leeds that he had planted a weapon on an inmate at Auburn Correctional Facility. ADA Leeds maintained contemporaneous notes following this meeting and subsequent activities surrounding the admission by Officer Cornell. This admission to ADA Leeds resulted in Plaintiff's conviction being vacated. (Cowan Dec. Ex K, p. ; Rynecki Dec. Ex. 4)

45.     Officer Cornell denies any reason to "set up" Plaintiff with a weapon.

Plaintiff's response: Admitted that this was Officer Cornell's testimony, however it is disputed. A fact cannot be undisputed simply because a self-serving report and declaration makes the claim.

46.     Plaintiff is not claiming any physical injuries as a result of this incident.

Plaintiff's response: Admitted.

47.     Plaintiff had previously been charged with, and disciplined for, possessing a weapon at Elmira Correctional Facility prior to the subject incident, on October 20, 2013.

Plaintiff's response: Admitted, however this is not a material fact of the subject case.

**PLAINTIFF'S SUPPLEMENTAL RULE 56.1 STATEMENT OF FACTS IN FURTHER OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

48.     Plaintiff stated that on January 21, 2016 he had been in his cell with the gate open listening to music when he was asked to show his hands to Officer Cornell and another unknown Officer. (Rynecki Dec. Ex. 4, Cowan Ex. B.36, Ex. E 16)

49.     Plaintiff was taken down the gallery in D-Block to office space before the catwalk. (Rynecki Dec. Ex. 4, Cowan Ex. C.60, Ex. E 16, 18)

12

50. Officer Cornell told Plaintiff that he had to strip search him as there was information that he had a weapon to which he complied with the search. (Rynecki Dec. Ex 54.)

51. No weapon was found on Plaintiff. (Rynecki Dec. Ex. 4)

52. Officer Cornell stated to Plaintiff "This isn't personal. If it was, we would be fighting." (Rynecki Dec. Ex. 4)

53. Officer Cornell further stated to Plaintiff "Now you have a weapon" and pulled out a white sharpened toothbrush wrapped in a cloth. (Rynecki Dec. Ex. 4)

54. Officer Cornell told the Sergeant that Plaintiff pulled the weapon from his buttocks and handed it to him. (Rynecki Dec. Ex. 4)

55. As a result of Officer Cornell's search, Plaintiff was taken to the Special Housing Unit of Auburn Correctional Facility. (Cowan Dec. Ex. B, p. 35)

56. Plaintiff pled "not guilty" at his Disciplinary Hearing. (Rynecki Dec. Ex. 2)

*57.* Following Plaintiff's less than thirty minute Disciplinary Hearing he was sentenced to 180 days in the Special Housing Unit. (Id)

58. On October 11, 2016 Plaintiff was convicted and sentenced for Possession of Prison Contraband in the First Degree to a 2 to 4 year sentence. (Rynecki Dec. Ex. 4)

59. Plaintiff pled guilty because he did not have money to fight the charges. (Rynecki Dec. Ex. 4)

60. Plaintiff pled guilty because he was counseled that he could be found a persistent offender and face a life imprisonment sentence if found guilty at trial. (Rynecki Dec. Ex. 4).

61. A notice to appeal of the criminal conviction was filed on Oct. 13, 2016. (Rynecki Dec. Ex. 5).

61. Plaintiff was never in possession of the weapon that Officer Cornell stated he found on Plaintiff. (Rynecki Dec. Ex. 4)

62. After four months in the Auburn Correctional Facility SHU, Plaintiff was transferred to Comstock Correctional Facility where he spent approximately 2 months. (Rynecki Dec. Ex. 4)

63. After approximately 2 months at Comstock Correctional Facility, Plaintiff was transferred to Five Points Correctional Facility on November 2, 2016, where he remained until he was ultimately released from custody on January 19, 2017. (Rynecki Dec. Ex. 4)

64. As a result of Plaintiff's conviction for possession of prison contraband in the first degree, Plaintiff was incarcerated for an additional six months before his release. (Rynecki Dec. Ex. 4)

65. Plaintiff provided at statement to DOCCS Office of Special Investigation Plaintiff dated December 19, 2016. (Rynecki Dec. Ex. 4)

66. Officer Cornell was suspended from his job as a DOCCS Correction Officer on December 12, 2016. (Rynecki Dec. Ex. 1)

67. Officer Cornell resigned his position as a DOCCS Correction Officer on February 27, 2018. (Rynecki Dec. Ex. 1)

68. Officer Cornell remained suspended from December 12, 2016 until his resignation on February 27, 2018. (Rynecki Dec. Ex.1)

Dated: October 21, 2020

                                        Scott E. Rynecki, Esq.
                                        Bar Roll No.: 520838

                                        _____s/_____
                                        Rubenstein & Rynecki, Esqs.
                                        *Attorneys for Plaintiff*

16 Court Street, Suite 1717
Brooklyn, New York 11241
(718) 522-1020
Email: rubrynlaw@aol.com