UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
 ----------------------------------------------------------------------- X

DONNESIA BROWN,

                        Plaintiffs,

            -against-

THE STATE OF NEW YORK, THE NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION, NEW YORK STATE CORRECTIONS
OFFICER MATTHEW CORNELL, Individually and in his
Official Capacity

                        Defendants.

17-CV-1036 (MAD)(ATB)

 ----------------------------------------------------------------------- X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
# THE MOTION FOR SUMMARY JUDGMENT OF
# NEW YORK STATE CORRECTIONS OFFICER MATTHEW CORNELL

Scott Rynecki
Rubenstein and Rynecki, Esqs.
16 Court Street, 17th Floor
Brooklyn, New York 11241
(718) 522-1020
*Attorneys for Plaintiff*

## Table of Contents

TABLE OF AUTHORITIES ............................................................................... *iii*

PRELIMINARY STATEMENT ........................................................................... 1

STANDARD OF REVIEW .................................................................................. 6

POINT I

DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S FALSE ARREST/IMPRISONMENT CLAIM ...................................... 7

WHETHER OFFICER CORNELL PLANTED CONTRABAND ON PLAINTIFF IS
AT LEAST A JURY QUESTION ........................................................................... 7

POINT II

DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S DENIAL OF A RIGHT TO A FAIR TRIAL CLAIM ........................... 12

POINT III

THE ADMINISTRATIVE REMEDIES WERE UNAVAILABLE TO THE
PLAINTIFF ..................................................................................................... 14

POINT IV

OFFICER CORNELL IS NOT ENTITLED TO QUALIFIED IMMUNITY .............. 17

POINT V

PLAINTIFF CAN RECOVER COMPENSATORY DAMAGES, PUNITIVE
DAMAGES, AND NOMINAL DAMAGES UNDER THE PLRA ............................. 18

CONCLUSION ................................................................................................. 19

## **Table of Authorities**

**Cases**

*Anderson v. Creighton,* 483 U.S. 635, 637–38, 107 S. Ct. 3034, 3038, 97
L. Ed. 2d 523 (1987) ...............................................................................17

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S. Ct. 2505
(1986) ........................................................................................................6

*Braxton v. Bruen*, 2020 WL 5752333, at *7–8 (N.D.N.Y. Aug. 24,
2020), *report and recommendation adopted,* 2020 WL 5751172
(N.D.N.Y. Sept. 25, 2020) ......................................................................16

*Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed.
1879 (1949) ...............................................................................................8

*Britt v. Carberry*, 2019 WL 3365766 (N.D.N.Y. Mar. 22, 2019) ................16

*Broughton v. State,* 37 N.Y.2d 451, 457 (N.Y.1975) ...................................7

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986 .......6

*Cerrone v. Brown,* 246 F.3d 194, 197 (2d Cir. 2001) ....................................8

*Dillard v. City of Syracuse,* 51 A.D.2d 432, (4d Dep't 1976) ...................7-8

*Douglas v. City of New York,* 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009). ....6

*Garnett v. City of New York,* 2014 WL 3950904 (S.D.N.Y. Aug 13, 2014). ..........6,13

*Geter v. Fortenberry,* 849 F.2d 1550, 1559 (5th Cir.1988) ........................17

*Holland v. City of New York,* 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) ..................18

*Jackson v. Downstate Corr. Facility*, No. 16-CV-0267, 2018 WL
163650136, at *8 (S.D.N.Y. July 31, 2018). ...........................................16

*Jenkins v. City of New York*, 478 F.3d 76, 84–85 (2d Cir. 2007) .............7-8

*Jimminez v. City of New York,* 2016 WL 1092617 (E.D.N.Y) ....................11

*Johnson v. Killina,* 680 F. 3d 234 (2d Cir. 2012). .......................................6

*Kerman v. City of New York,* 374 F.3d 93, 125 (2d Cir.2004) ...................18

*Maldonado v. Mandalaywala*, 2020 WL 1159426, (N.D.N.Y. Feb. 12,
2020) ...............................................................................................................16

*Malik v. City of New York,* No. 11 Civ. 6062, 2012 WL 3345317, at *16
(S.D.N.Y. Aug. 15, 2012) *report and recommendation adopted,* 2012
WL 4475156 (S.D.N.Y. Sept. 28, 2012). ...................................................18

*Molina v. City of New York,* 28 A.D.3d 372, 373, (1st Dep't.2006) ...............................8

*Morse v. Fusto* 804 F.3d 538, 547 (2d Cir. 2015). ...................................................13

*People v. Coffey,* 12 N.Y.2d 443 (N.Y.1963). ...................................................... 7-8

*Perez v. Duran*, 962 F. Supp 2d 533, 536 (S.D.N.Y. 2013). ...................................... 6-7

*Redd v. New York Div. of Parole,* 678 F.3d 166, 174 (2d Cir. 2012). ...........................6

*Ricciuti v. N.Y.C. Transit Auth.* 124 F.3d 123, 130 (2d Cir. 1997)....................12,13,17

*Rosado v. Herard,* No. 12 Civ. 8943, 2014 WL 1303513, at *13
(S.D.N.Y. Mar. 25, 2014) .........................................................................18

*Ross v. Blake,* 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016). ......................... 14-15

*Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir. 2009) ...................................................6

*Smith v. Springer,* 859 F.2d 31, 34 (7th Cir.1988) ...............................................17

*Terry v. Hulse,* No. 16-CV-252, 2018 WL 4682784, at *9 (S.D.N.Y. Sept.
28, 2018) ................................................................................................16

*Thaxton v. Simmons*, 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ............. 16-17

*Thompson v. Carter,* 284 F.3d 411, 418 (2d Cir.2002) .............................................18

*Tokio Marine v. Macready,* 803 F. Supp 2d 193 (E.D.N.Y 2011). ...............................6

*United States ex rel. Moore v. Koelzer,* 457 F.2d 892, 893–94 (3d
Cir.1972).................................................................................................. 17

*United States v. Patrick,* 899 F.2d 169, 171 (2d Cir.1990) ........................................8

*Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). ...................................................7

*Williams v. Prianto*, 829 F.3d 118 (2d Cir. 2016), ...................................................16

**<u>Statutes and Other Authority</u>**

Criminal Procedure Law 440 ....................................................................................4,9,13

Federal Rule of Civil Procedure 56 ...............................................................................6

42 U.S.C. § 1983............................................................................................7,12,13,19

42 U.S.C. § 1997e(a)..........................................................................................14,15

New York Penal law 205.25 ......................................................................................11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X

DONNESIA BROWN,

                                                          17-CV-1036 (MAD)(ATB)

                              Plaintiffs,

                    -against-

THE STATE OF NEW YORK, THE NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION, NEW YORK STATE CORRECTIONS
OFFICER MATTHEW CORNELL, Individually and in his
Official Capacity

                              Defendants.
------------------------------------------------------------------------- X


## PRELIMINARY STATEMENT

This memorandum of law is submitted in opposition to the motion of defendant The NEW YORK STATE CORRECTIONS OFFICER MATTHEW CORNELL, individually, ("Officer Cornell") which seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRPC"). For the reasons set forth herein, this motion should be denied as material questions of fact preclude the granting of summary judgment.

On January 21, 2016, Donnesia Brown ("Plaintiff" or "Brown"), an inmate at Auburn Correctional Facility, was was sitting in his cell when he was rushed by Officer Cornell and another unknown Officer. (Rynecki Dec. Ex. 4, Cowan Ex. B 36, Ex. E 16). His hands were grabbed and Brown was pulled out of his cell and patted down. *Id.* He was thereafter handcuffed and walked to a room in the middle of the gallery and made to strip. (Rynecki Dec. Ex. 4, Cowan Ex. B pp. 34-35,39 Ex. C 60, Ex. E 16,18). He was then asked by Officer Cornell if he had a weapon. (Rynecki Dec. Ex. 4) He replied that he did not and Officer Cornell then said, "you have one now" and Officer Cornell opened a cloth revealing a sharpened toothbrush described as an ice pick. (Rynecki Dec. Ex. 4, Cowan Dec. Ex. B pp. 34-35,39) Plaintiff testified that Officer Cornell then

said, "this is nothing personal. If it was we'd be fighting."(Rynecki Dec. Ex. 4, Cowan Dec. Ex. B pp. 34-35,39) Brown was immediately sent from general population to Auburn Special Housing Unit ("SHU'), a/k/a the box, and issued a misbehavior ticket. (Cowan Ex. E, p. 19; Ex. C pp.63-65) He subsequently pled not guilty at a disciplinary hearing. (Rynecki Dec. Ex. 2) Following Plaintiff's less than thirty minute Disciplinary Hearing he was sentenced to 180 days in the Special Housing Unit. (Rynecki Dec. Ex. 2, Cowan Ex. 4 pp. 53-54)

Officer Cornell testified that Sergeant Pyke requested that Officer Cornell conduct the search of the plaintiff based on information he had gleaned from confidential information because of a fight that plaintiff was cut by another inmate a day or two prior. (Cowan Ex. E pp.1, 16, Ex. D pp. 28-29l Ex. C p. 66) Sergeant Pyke denies knowledge of the search and denied knowledge that had gleaned information regarding confidential information. (Cowan Ex. D 29, 32) Officer Cornell testified that Sergeant Pyke was present during the strip frisk, and that the during the strip frisk the weapon was discovered. (Cowan Ex. E. pp 1, 16, 18, 19, 24, 25, 27, 28) Sergeant Pyke denied knowledge that he was present during the strip frisk, and denied knowledge that he was present when the sharpened toothbruth was discovered. (Cowan Ex. D pp. 29, 30, 32)

The plaintiff alleges that Officer Cornell planted the contraband on his person in retaliation for an incident which occurred shortly prior when the plaintiff disobeyed a corrections officer's command not to "cross a line" in the middle of the recreation yard prior to the date of the incident. (Rynecki Ex. 2). Plaintiff was aware that Officer Cornell was known in Auburn to "set up" other inmates, but denied knowledge why Officer Cornell chose him to set up on the date of the incident. (Rynecki Ex. 2, Cowan Ex. B. pg. 28).

After Cornell planted a tootbrush handle sharpened to the point on one end described as an ice pick on Brown, he was placed in Auburn SHU, Brown filed a complaint with the Office of Special Investigations. (Rynecki Ex. 4). Upon being found guilty at the disciplinary hearing, plaintiff did not appeal the decision or file any grievances regarding this incident, believing that

he was not trying to stir up any trouble while he was doing his time, and that it was known that they would just throw grievances in the garbage, so it would be a waste of time. (Cowan Dec. Ex. B, p. 57)

Brown was subsequently criminally charged with promoting prison contraband in the first degree regarding the subject incident. (Cowan Ex. K pp 22, 88, 89) At the criminal proceeding related to this contraband charge, the plaintiff alleges that he was advised by his legal aid counsel that if he took his case to court, to trial, and lose, and he would lose, he was going to get a life sentence. And as Brown stated "I wasn't spending life for something that I didn't do." (Rynecki Ex. 4).  Brown ultimately plead guilty to the prison contraband weapons charge and was given a sentence of two to four years which he served an additional four months. (*Id.*) Plaintiff pled guilty because he did not have money to fight the charges. (*Id.*)  Plaintiff pled guilty because he was counseled that he could be found a persistent offender and face a life imprisonment sentence if found guilty at trial. (*Id.;* Cowan Ex. G p. 6*)* Plaintiff was never in possession of the weapon that Officer Cornell stated he found on Plaintiff. (Rynecki Ex. 4*.)* On October 13, 2016, plaintiff filed a Notice of Appeal of his criminal conviction. (Rynecki Dec. Ex. 5).

Plaintiff was incarcerated in Auburn in the SHU, in solitary confinement, for four months subsequent to being found guilty at the disciplinary hearing on the contraband charges, he was subsequently transferred to Comstock Correctional Facility for two months and then finally to Five Points Correctional Facility before he was released on January 19, 2017, more than four months after his original sentence was set to expire. (Rynecki Ex. 4*.)*

ADA Brian Leeds met with Officer Cornell on December 9, 2016 for preparation of testimony in an upcoming unrelated trial at which time Officer Cornell admitted to ADA Leeds that he had planted a weapon on an inmate at Auburn Correctional Facility. ADA Leeds maintained contemporaneous notes following this meeting and subsequent activities surrounding the

admission by Officer Cornell. This admission to ADA Leeds resulted in Plaintiff's conviction being vacated. (Rynecki Dec. Ex. 3).

Thereafter, the District Attorney wrote a letter to Cayuga County Court Judge Mark Fandrich, indicating that he would not oppose a motion by plaintiff's counsel under Criminal Procedure Law §440 to vacate planittff's guilty plea and sentence. (Cowan Dec. Ex. H)  Cayuga County District Attorney Jon Budelmann's letter states that "Pursuant to our legal and ethical obligations of disclosure, we have recently learned of an infirmity regarding the credibility of our main witness in the case, Corrections Officer Matthew Cornell. Specifically, we have credible evidence that that Officer Cornell placed a contraband weapon on another inmate at Auburn Correctional Facility…" (Cowan Dec. Ex. H) And further states, "given the severity of the conduct itself and the fact that the prosecution was sustained almost entirely on Officer Cornell's testimony regarding the search of the defendant and the recovery of the contraband item, we no longer have confidence in the correctness of the conviction." (Cowan Dec. Ex. H). ADA Leeds was personally disappointed that nothing was ever criminally brought against Cornell. (Cowan Ex. K pp. 99).

By Order dated January 17, 2017 by Cayuga County Court Judge Mark Fandrich the judgment of conviction entered against him on October 11, 2016 for possessing prison contraband in the first degree was vacated, the indictment was dismissed in the furtherance of justice with prejudice without leave to re-present and Plaintiff was ordered discharged from custody forthwith. (Rynecki Ex. 4)

As a result of Officer Cornell's actions, plaintiff was placed in the SHU in solitary confinement for four months, he was forced to accept a plea deal for two to four years which he served an additional four months, he was unable to find gainful employment upon release, and significantly interfered in his personal relationships among other damages. (Rynecki Ex. 4, Cowan Ex. B pp 71-81)

- 4 -

An investigation into Officer Cornell was conducted by the Department of Corrections and Community Supervision's Office of Special Investigations. (Rynecki Ex. 1, 3) The Department of Corrections and Community Supervision's Office of Special Investigations substantiated allegations against Officer Cornell that various contraband items and potential inmate style weapons were found in Officer Cornell's personal locker and vehicle. Officer Cornell admitted to the Office of Special Investigations to finding various inmate style cutting type weapons in common areas of the facility when questioned under oath. Further, upon conducting a search of Officer Cornell's assigned locker the Office of Special Investigations learned that Officer Cornell used a separate locker and while his assigned locker only contained a coat hanger, the unassigned locker contained an employee's manual, a 2017 calendar book, a contract book, numerous pay stubs belonging to Officer Cornell, a baton with no identification number, a personal jacket, a pair of black Carhartt gloves, a state DOCCS knit winter hat, a blue short-sleeve work shirt, a plastic bag with various size screws and washers, a broken set of inmate nail clippers, a large metal spoon with brown residue, a broken pair of tweezers, a broken pair of large toenail clippers, a lever from a small pair of nail clippers, a quarter, an electric motor with red wire, three straightened heavy staples, electric circuit tape an empty evidence bag with a date of June 13, 2014 stuck to a "Request for test of suspected contraband drugs", also dated June 13, 2014, with inmate information written on it, that states "positive for heroin". Upon a search of Officer Cornell's personal vehicle OSI recovered a Weatherby 30-06 caliber rifle with a scope and five rounds attached to the stock, an additional nineteen rounds in two separate ammunition boxes, half of a jig saw blade and a thin metallic object with a black tape handle. (Rynecki Ex. 1, 3)

Officer Cornell was suspended from his job as a DOCCS Correction Officer on December 12, 2016. Officer Cornell resigned his position as a DOCCS Correction Officer on February 27, 2018. Officer Cornell remained suspended from December 12, 2016 until his resignation on February 27, 2018. (Rynecki Ex. 1)

## STANDARD OF REVIEW

Summary judgment is inappropriate if the Court, resolving all ambiguities and drawing all reasonable inferences against the moving parties, finds that the dispute about a material fact is "such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S. Ct. 2505 (1986); *see also* FRPC 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986).  Applying this standard requires the Court to examine both the "caliber" and the "quantity" of the evidence "through the prism of the substantive evidentiary burden," and warns against "denigrat[ing] the role of the jury." 477 U.S. at 252. To that end, the Supreme Court emphasized, "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.,* 477 U.S. at 255.  See also *Redd v. New York Div. of Parole,*  678 F.3d 166, 174 (2d Cir. 2012).

It is well settled that "the party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish the right to judgment as a matter of law." *Tokio Marine v. Macready,* 803 F. Supp 2d 193 (E.D.N.Y 2011). The Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor . " *Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir. 2009).  In determining whether there is a triable issue of fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against who summary judgment is sought." *Johnson v. Killina,*  680 F. 3d 234 (2d Cir. 2012).

"The  Court must decide whether a rational juror could find in favor of the non-moving party." *Garnett v. City of New York,* 2014 WL 3950904 (S.D.N.Y. Aug 13, 2014). In making that determination, "the role of the Court is not ask whether the evidence unmistakable favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff." *Douglas v. City*

*of New York,* 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009). Thus, 'summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party." *Perez v. Duran*, 962 F. Supp 2d 533, 536 (S.D.N.Y. 2013).

**POINT I**

**DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FALSE ARREST/IMPRISONMENT CLAIM**

<u>Whether Officer Cornell Planted Contraband on</u>
<u>Plaintiff is at Least a Jury Question</u>

To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996).  A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law. *Id.*" The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Id.* ; *see also Broughton v. State,* 37 N.Y.2d 451, 457 (N.Y.1975) (plaintiff will prevail on a claim of false arrest under New York law if he can show that the arrest was not privileged, i.e., not based on probable cause). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant,* 101 F.3d at 852.  *See also Jenkins v. City of New York*, 478 F.3d 76, 84–85 (2d Cir. 2007)

Where an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful. *Broughton v. State,* 37 N.Y.2d 451, 457 (N.Y.1975). However, "[t]his presumption is rebutted if, applying the reasonable, prudent person test, the arresting

officer, acting in good faith, had 'reasonable cause for believing the person to be arrested to have committed [a felony].' " *Dillard v. City of Syracuse,* 51 A.D.2d 432, 435, 381 N.Y.S.2d 913 (N.Y.App.Div.1976) (quoting *People v. Coffey,* 12 N.Y.2d 443, 451, 240 N.Y.S.2d 721, 191 N.E.2d 263 (N.Y.1963).  When the facts are construed in favor of the plaintiff, the Court applies an objective reasonable determination of probable cause. *See Molina v. City of New York,* 28 A.D.3d 372, 373, (1ˢᵗ Dep't.2006)

Thus, under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is only appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable. *See Cerrone v. Brown,* 246 F.3d 194, 197 (2d Cir. 2001); *Dillard v. City of Syracuse*, 51 A.D.2d 432, 435, ( 4ᵗʰ Dep't 1976). If, however, on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims. *Jenkins v. City of New York,* 478 F.3d 76, 88 (2d Cir. 2007).

Probable cause is evaluated on the totality of the circumstances. *United States v. Patrick,* 899 F.2d 169, 171 (2d Cir.1990) (citing *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949

Applying those standards to the evidence on the record, Officer Cornell performed a strip search of the plaintiff in a secluded area in retaliation for an altercation with a Correctional Officer. (Rynecki Ex. 2, Ex. 4, Cowan Ex. B 34-35,39 Ex. C 60, Ex. E 16,18).  During this strip search, Officer Cornell planted an ice pick/toothbrush handle sharpened to a point at one end. (Rynecki Dec. Ex. 4, Cowan Dec. Ex. B pp. 34-35,39). Officer Cornell, immediately thereatedned Brown stating "Nothing personal" then proceeded to unwrap a cloth with the contraband inside. (Rynecki

Dec. Ex.4 , Cowan Dec. Ex. B pp. 34-35, 39) Brown was immediately sent to the SHU and issued a misbehavior ticket for the possession of the prison contraband that Officer Cornell had planted on him. (Cowan Ex. E,.  p. 19; Ex. C pp.63-65)  Plaintiff testified that he denied possessing the sharpened toothbrush, and contested the displinary charges at the subsequent disciplinary hearing. (Rynecki Ex. 2,4) While plaintiff denied knowledge why Officer Cornell set him up on this occasion.

Despite Officer Cornell's testimony, Seargent Pyke denies knowledge of the subject search, denied knowledge that had gleaned information regarding confidential information, denied knowledge that he was present during the strip frisk, and denied knowledge that he was present when the sharpened toothbrush was alledly discovered on the plaintiff. (Cowan Ex. D 29, 30 32) Seargant Pyke's only basis for his testimony was a self-serving report he sent to Lt. Quinn contemporaneously at the time of the incident. (Cowan Ex. D pp. 29, 30, 32)

Moreover, at the criminal proceeding related to this contraband charge, the plaintiff testified that the he was advised by the Court and by his legal aid counsel that if he took his case to court, to trial, and lose, and he would lose, he was going to get a life sentence. Brown testified "I wasn't spending life for something that I didn't do." (Rynecki Ex. 4).  Plaintiff ultimately pled guilty to the prison contraband weapons charge and was given a sentence of two to four years and served an additional four months. (Rynecki Ex. 4).

Officer Cornell admitted to Cayuga County Assistant District Attorney, Brian Leeds, that he had planted a weapon on an inmate. The District Attorney wrote a letter to Cayuga County Court Judge Mark Fandrich, indicating that he would not oppose a motion by plaintiff's counsel under Criminal Procedure Law § 440 to vacate plaintiff's guilty plea and sentence. Plaintiff's guilty plea for promoting prison contraband in the first degree was subsequently vacated. (Rynecki Dec. Ex. 3, Cowen Ex. H).

The Department of Corrections and Community Supervision's Office of Special Investigations substantiated allegations against Officer Cornell that various contraband items and potential inmate style weapons were found in Officer Cornell's personal locker and vehicle. Officer Cornell admitted to the Office of Special Investigations to finding various inmate style cutting type weapons in common areas of the facility when questioned under oath. Further, upon conducting a search of Officer Cornell's assigned locker the Office of Special Investigations learned that Officer Cornell used a separate locker and while his assigned locker only contained a coat hanger, the unassigned locker contained an employee's manual, a 2017 calendar book, a contract book, numerous pay stubs belonging to Officer Cornell, a baton with no identification number, a personal jacket, a pair of black Carhartt gloves, a state DOCCS knit winter hat, a blue short-sleeve work shirt, a plastic bag with various size screws and washers, a broken set of inmate nail clippers, a large metal spoon with brown residue, a broken pair of tweezers, a broken pair of large toenail clippers, a lever from a small pair of nail clippers, a quarter, an electric motor with red wire, three straightened heavy staples, electric circuit tape an empty evidence bag with a date of June 13, 2014 stuck to a "Request for test of suspected contraband drugs", also dated June 13, 2014, with inmate information written on it, that states "positive for heroin". Upon a search of Officer Cornell's personal vehicle OSI recovered a Weatherby 30-06 caliber rifle with a scope and five rounds attached to the stock, an additional nineteen rounds in two separate ammunition boxes, half of a jig saw blade and a thin metallic object with a black tape handle. Officer Cornell has never provided any explanation for what Office of Special Investigations discovered in his unauthorized locker and his vehicle. (Rynecki, Ex. 1).  ADA Leeds was personally disappointed that no criminal charges were ever brought against Cornell. (Cowan Ex. K pp. 99).

Officer Cornell was suspended from his job as a DOCCS Correction Officer on December 12, 2016. Officer Cornell resigned his position as a DOCCS Correction Officer on February 27, 2018. Officer Cornell remained suspended from December 12, 2016 until his resignation on February 27, 2018. (Rynecki Ex. 1)

- 10 -

As such, plaintiff's testimony in addition to the totality of the evidence in the record raise material issues of fact as to whether Officer Cornell planted the contraband on the plaintiff. Consequently, Officer Cornell planting of the contraband on the plaintiff would preclude any possibility of the existence of probable cause to arrest the plaintiff for violating New York Penal law 205.25, for promoting prison contraband in the first degree. Certainly, if a jury finds that no probable cause existed for this arrest/imprisonment, a jury would certainly find that defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement, the plaintiff did not consent to the confinement, and that confinement was not otherwise privileged or at the very least a material issue of fact exists for a jury to determine.

Defendants reliance on *Jimminez v. City of New York,* 2016 WL 1092617 (E.D.N.Y) is similarly misplaced. In *Jimminez*, The Court stated that one cannot say "that police never plant contraband as a pretext for an arrest, or that a plaintiff is never able to raise an issue of fact that they did. And if that is the allegation, a plaintiff could even survive summary judgment without having seen the police in the act of planting the contraband as plaintiff here admits he did not observe." The Court further opined that in order to support such an allegation, the plaintiff "must come up with something more than a smidgen of circumstantial evidence to show that there is a genuine, not merely possible, basis for a jury to buy his theory." *Jimminez v. City of New York,* 2016 WL 1092617 (E.D.N.Y).

Here, unlike in *Jimminez,* from the outset, the plaintiff has testified that Officer Cornell conducted the search and planted the contraband on his person in retaliation for an altercation with a Correction Officer. (Rynecki. Ex. 2)  Plaintiff has vehemently denied ever being in possession of the contraband, and has always maintained that Officer Cornell planted the contraband. (Rynecki Ex. 2, 5)  Further, Plaintiff contested the possession of the contraband at his disciplinary hearing and maintains he only plead guilty at his subsequent criminal trial because both the Court

and his Legal Aid attorney advised him, that if he contested this matter at trial, he could face the possibility of a life sentence, as the plaintiff testified "I wasn't spending life for something that I didn't do." (*Id.*)

Moreover, plaintiff's criminal charges for promoting prison contraband was subsequently vacated upon ADA Leeds discovering that Officer Cornell had planted a weapon on an inmate in the past. While the DOCCS Office of Special Investigations internal investigation found that allegations against Officer Cornell were unsubstantiated, a search of Officer Cornell's personal locker and vehicle discovered without any explanation various contraband items and potential inmate style weapons were found. (Cowan Dec. Ex. H, Rynecki Ex. 1)

Officer Cornell was suspended from his job as a DOCCS Correction Officer on December 12, 2016. Officer Cornell resigned his position as a DOCCS Correction Officer on February 27, 2018. Officer Cornell remained suspended from December 12, 2016 until his resignation on February 27, 2018. (Rynecki Ex. 1)

The record here in totality supports the plaintiff's position that Officer Cornell planted the contraband on the plaintiff or at the very least is a jury question. As such, Defendants motion for summary judgment to dismiss plaintiffs claims for false arrest/false imprisonment should be denied.

**POINT II**

**DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DENIAL OF A RIGHT TO A FAIR TRIAL CLAIM**

When an officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for

damages under 42 U.S.C. 1983." *Ricciuti v. N.Y.C. Transit Auth.* 124 F.3d 123, 130 (2d Cir. 1997). Importantly, "probable cause is not a defense" to a denial of a fair trial claim. *Garnett v. City of New York,* 2014 WL 3950904 (S.D.N.Y. Aug 13, 2014). *Ricciuti* makes clear that the claim may lie even where a trial never takes place. *Ricciuti v. N.Y.C. Transit Auth.* 124 F.3d 123, 127 (2d Cir. 1997). Plaintiff has a "constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity" *Morse v. Fusto* 804 F.3d 538, 547 (2d Cir. 2015).

Applying those standards to the evidence on the record, as discussed above there is certainly a question of fact as to whether during the strip search of plaintiff, Officer Cornell planted an ice pick/toothbrush handle. Plaintiff contested the disciplinary charges at the subsequent disciplinary hearing. (Rynecki Ex. 2).

Moreover, at the criminal proceeding related to this contraband charge, the plaintiff testified that the he was advised by the Court and by his legal aid counsel that if he took his case to court, to trial, and lose, and he would lose, he was going to get a life sentence. Brown testified "I wasn't spending life for something that I didn't do. (Rynecki Ex. 4).

Additionally, Officer Cornell admitted to Cayuga County Assistant District Attorney, Brian Leeds, that he had planted a weapon on an inmate. The District Attorney wrote a letter to Cayuga County Court Judge Mark Fandrich, indicating that he would not oppose a motion by plaintiff's counsel under Criminal Procedure Law § 440 to vacate plaintiff's guilty plea and sentence. Plaintiff's guilty plea for promoting prison contraband in the first degree was subsequently vacated. (Cowan Dec. Ex. H, Rynecki Ex. 4)

Finally, The Department of Corrections and Community Supervision's Office of Special Investigations substantiated allegations against Officer Cornell that various contraband items and potential inmate style weapons were found in Officer Cornell's personal locker and vehicle.

Officer Cornell admitted to the Office of Special Investigations to finding various inmate style cutting type weapons in common areas of the facility when questioned under oath. Further, upon conducting a search of Officer Cornell's assigned locker the Office of Special Investigations learned that Officer Cornell used a separate locker and while his assigned locker only contained a coat hanger, the unassigned locker contained an employee's manual, a 2017 calendar book, a contract book, numerous pay stubs belonging to Officer Cornell, a baton with no identification number, a personal jacket, a pair of black Carhartt gloves, a state DOCCS knit winter hat, a blue short-sleeve work shirt, a plastic bag with various size screws and washers, a broken set of inmate nail clippers, a large metal spoon with brown residue, a broken pair of tweezers, a broken pair of large toenail clippers, a lever from a small pair of nail clippers, a quarter, an electric motor with red wire, three straightened heavy staples, electric circuit tape an empty evidence bag with a date of June 13, 2014 stuck to a "Request for test of suspected contraband drugs", also dated June 13, 2014, with inmate information written on it, that states "positive for heroin". Upon a search of Officer Cornell's personal vehicle OSI recovered a Weatherby 30-06 caliber rifle with a scope and five rounds attached to the stock, an additional nineteen rounds in two separate ammunition boxes, half of a jig saw blade and a thin metallic object with a black tape handle. Officer Cornell has never provided any explanation for what Office of Special Investigations discovered in his unauthorized locker and his vehicle which Officer Cornell was suspended from his job as a DOCCS Correction Officer until his eventual resignation. (Rynecki Ex. 1)

As such, at the very least whether Officer Cornell planted the sharpened toothbrush/ice pick on Plaintiff is a question for a jury to decide not the Court.


**POINT III**

**THE ADMINISTRATIVE REMEDIES WERE UNAVAILABLE TO THE PLAINTIFF**

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross v. Blake,* 136 S. Ct. 1850, 1858, 195 L. Ed. 2d

117 (2016).  More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859.

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

After Officer Cornell planted the contraband on Brown, Brown filed a complaint with the Office of Special Investigations. (Rynecki Ex. 3). Upon being found guilty at the disciplinary hearing, plaintiff did not appeal the decision or file any grievances regarding this incident, believing that he was not trying to stir up any trouble while he was doing his time, and that it would have been a waste of time to file any grievances or appeals as he believed they just threw them in the garbage.  (Rynecki Ex. *4.;* Cowan Ex. G p. 6)

Moreover, Plaintiff was incarcerated in Auburn in the SHU in solitary confinement for four months subsequent to being found guilty at the disciplinary hearing on the contraband charges, he was subsequently transferred to Comstock Correctional Facility and then finally to Five Points Correctional Facility before he was released on January 19, 2017, more than four months after his

original sentence was set to expire which made the grievance process regarding this incident even more unavailable to the plaintiff. (Rynecki Ex. 4.)

Additionally, On Oct. 13, 2016, plaintiff filed a notice of appeal of his criminal conviction. (Rynecki Dec. Ex. 5).

The case is similar to *Williams v. Prianto*, 829 F.3d 118 (2d Cir. 2016), where the plaintiff alleged that the guard must have disposed of the grievance because the facility had no record of the grievance.  The Second Circuit ruled in favor of the inmate finding that the administrative remedies were unavailable holding that "[u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed." *Id.* at 126. *See* also *Maldonado v. Mandalaywala*, 2020 WL 1159426, (N.D.N.Y. Feb. 12, 2020) (applying *Williams* despite the fact that the plaintiff was not confined in the SHU and did not submit any contemporaneous correspondence inquiring about the status of his grievance);  *Britt v. Carberry*, 2019 WL 3365766 (N.D.N.Y. Mar. 22, 2019) (applying *Williams* where the plaintiff filed grievances, while in the SHU, with the grievance office, but failed to follow up or appeal and failed to proffer copies of the grievances on the motion); *Jackson v. Downstate Corr. Facility*, No. 16-CV-0267, 2018 WL 3650136, at *8 (S.D.N.Y. July 31, 2018).

In <u>*Braxton v. Bruen*</u>, 2020 WL 5752333, at *7–8 (N.D.N.Y. Aug. 24, 2020), <u>report and recommendation adopted,</u> 2020 WL 5751172 (N.D.N.Y. Sept. 25, 2020) this district found that when the record suggests that an inmate grievances were unfiled and unanswered, it creating an issue of fact as to the availability of administrative remedies under *Williams*. *See* also *Terry v. Hulse,* No. 16-CV-252, 2018 WL 4682784, at *9 (S.D.N.Y. Sept. 28, 2018) (denying summary judgment where the record contains sufficient detail regarding the plaintiff's attempts to file grievances) *see also Thaxton v. Simmons*, 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A]

- 16 -

question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants. Such credibility assessments are to be resolved by a trier of fact.").

As such, based on the totality of the evidence in the record, plaintiff's attempts to file grievances on multiple occasions, and the correctional facility failure

**POINT IV**

**OFFICER CORNELL IS NOT ENTITLED TO QUALIFIED IMMUNITY**

When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983. *United States ex rel. Moore v. Koelzer,* 457 F.2d 892, 893–94 (3d Cir.1972); *see also Smith v. Springer,* 859 F.2d 31, 34 (7th Cir.1988); *Geter v. Fortenberry,* 849 F.2d 1550, 1559 (5th Cir.1988). Qualified immunity is unavailable where, the action violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe otherwise. *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3039– 40.*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

Here, a reasonable jury could find, based on the evidence, that Officer Cornell violated the plaintiffs' clearly established constitutional rights by planting the contraband on the plaintiff, as discussed above and certainly to influence a jury's verdict and as such are not entitled to qualified immunity.

**POINT V**

**PLAINTIFF CAN RECOVER COMPENSATORY DAMAGES, PUNITIVE DAMAGES, AND NOMINAL DAMAGES UNDER THE PLRA**

Although the PLRA bars compensatory damages "for mental or emotional injury," even absent physical injury, a plaintiff may "compensatory damages for the loss of a constitutional liberty interest." *Holland v. City of New York,* 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) citing *Rosado v. Herard,* No. 12 Civ. 8943, 2014 WL 1303513, at *13 (S.D.N.Y. Mar. 25, 2014) ("[C]ompensatory damages for intangible deprivations of [the plaintiff's] liberty and personal rights—as 'distinct from pain and suffering, mental anguish, and mental trauma'—are not barred by the PLRA." *see also Malik v. City of New York,* No. 11 Civ. 6062, 2012 WL 3345317, at *16 (S.D.N.Y. Aug. 15, 2012) ("[T]he PLRA's physical injury requirement does not bar an award of compensatory damages for First Amendment violations."), *report and recommendation adopted,* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012). Such damages "are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering." *Rosado,* 2014 WL 1303513, at *13 (quoting *Kerman v. City of New York,* 374 F.3d 93, 125 (2d Cir.2004)). Further, the PLRA does not bar a plaintiff from recovering punitive or nominal damages. *See Thompson v. Carter,* 284 F.3d 411, 418 (2d Cir.2002) ("Section 1997e(e) does not limit the availability of nominal damages for the violation of a constitutional right or of punitive damages."). *Holland v. City of New York,* 197 F. Supp. 3d 529,537 (S.D.N.Y. 2016).

Here, while the Plaintiff concedes he did not suffer a physical injury, he can still recover compensatory damages for defendants violation of his § 1983 rights of his fourth, fifth, sixth, and fourteenth amendment right under the US. Constitution. As a result of Officer Cornell's actions, plaintiff was placed in the SHU in solitary confinement for four months, he was forced to accept a plea deal for two to four years which he served an additional four months, he was unable to find

gainful employment upon release, and significantly interfered in his personal relationships among other damages. (Rynecki Ex. 4, Cowan Ex. B pp 71-81) Further, Plaintiff can recover punitive damages under § 1983, for Officer Cornell's actions as well as nominal damages.

## **CONCLUSION**

Plaintiffs respectfully request that the Court deny summary judgment to Officer Matthew Cornell and permit a jury to determine the facts.

Dated: October 21, 2020

Respectfully submitted,

s/

Scott Rynecki
Rubenstein and Rynecki, Esqs.
16 Court Street, 17th Floor
Brooklyn, New York 11241
(718) 522-1020
*Attorneys for Plaintiff*
