# EXHIBIT 2

# CERTIFICATION

STATE OF NEW YORK )
COUNTY OF CAYUGA )
CITY OF AUBURN )

I, _Susan DeVall_, do hereby certify that the attached is

a true and accurate copy of the minutes of a Tier _III_ Hearing of the

THREE TIER DISCIPLINARY PROCEDURE held on _1/28/16_
( date )

in relation to _Brown D 11A4847_, which I have
transcribed

(Inmate's name and number)

to the best of my ability.

_Susan DuVall_

Sworn to before me this

_17ᵗʰ_ day of _July_, 2018

_Anthony Smith_
NOTARY PUBLIC

ANTHONY SMITH
NOTARY PUBLIC STATE OF NEW YORK
CAYUGA COUNTY LIC. ## ##########
COMM. EXP. #########

AUBURN CORRECTIONAL FACILITY

TIER III HEARING  - JANUARY 28, 2016 – TAPE #16-89

INMATE:  BROWN, DONNESIA – 11A4897

HEARING OFFICER:  BAUERSFELD


HEARING OFFICER:          Today's date is January 28th, 2016.  This tape will cover the

                          Tier III hearing for Brown, Donnesia – 11A4897.  I will now

                          stop the recorder to test it.

TAPE OFF

TAPE ON

HEARING OFFICER:          Today's date is January 28th, 2016.  The time now is

                          9:37 a.m.   This is commissioners hearing officer Bauersfeld

                          from Auburn Correctional Facility.  Present with me in the

                          hearing room…

INMATE BROWN:             Donnesia Brown, 11A4897.

HEARING OFFICER:          Thank you Mr. Brown.  Mr. Brown, this is going to be a three

                          tier hearing of the Tier III disciplinary process.  This hearing

                          is being recorded so speak up, refrain from speaking while

                          others are speaking so that we can assure that we record

                          the entire hearing.  Nothing you say during this hearing can

1

be used against you in any subsequent criminal proceeding.
You will have an opportunity to make a statement. You will
have an opportunity to request and present any
documentary or oral evidence you wish to be considered.
You will have the opportunity to request witnesses. Any
procedural objections or claims that you have should be
made promptly so they can be considered by me and if
possible responded to. Do you understand your rights and
obligations?

INMATE BROWN:       Yes.

HEARING OFFICER:    Okay, I have a hearing record sheet for Brown, Donnesia,
11A4897, location - currently you are in the SHU. What cell
are you in right now?

INMATE BROWN:       Four

HEARING OFFICER:    I 4? SHU I-4. All right, incident date is January 21, 2016.
Incident time 3:30 P.M. Inmate was confined, inmate was not
released at review. After the record that they did request an
extension in this uh hearing. The reason for that is you were
sent to mental health for observation on January 21, 2016.
Correct?

INMATE BROWN:       Correct.

2

HEARING OFFICER:    Okay, and they did put that extension request in on January 21, 2016. The response back from Special Housing on January 22, 2016 was they granted extension 16-EB-0550. Granted to commence within seven days and complete in 14 days of your return from mental health observation. Initials JB. So, this is a permanent part of the record, just reading that into the record. I also have that officer Johnston did serve you with a copy of the misbehavior report on January 25, 2016 at 10:02 a.m. Is that your signature there?

INMATE BROWN:    Yes.

HEARING OFFICER:    Okay and it is my understand that you did choose to select assistance. Is that your signature there?

INMATE BROWN:    Yes

HEARING OFFICER:    Okay, now it is my understanding that Officer Lupo did come to conduct your assistance. He first met with you on January 26, 2016 at 1:20 p.m. to begin conducting your assistance. Is that correct?

INMATE BROWN:    Yes.

HEARING OFFICER:    Okay, let's just go through here uh, you got the UI report?

INMATE BROWN:    Yes.

HEARING OFFICER:    Okay, then you got D Block log book?

3

INMATE BROWN:        No, I didn't get that

HEARING OFFICER:     Okay, because I don't have that, that wasn't in my copy

                     either so, that must be something they are still trying to go

                     and get.  Because the log books..

INMATE BROWN:        He wrote down it on a piece of paper.

HEARING OFFICER:     Oh, he wrote it on a piece, that's it, that's it.  No, no, no,

                     because the log books can't leave the blocks so uh.

INMATE BROWN:        I mean I can object to that.

HEARING OFFICER:     Well, you can object to it.  Essentially what it is though, is

                     that's how it is done.  There is no photo copiers in the blocks

                     and the log books can't leave the blocks.  So, what they do

                     is go and write down word for word whatever entry pertains

                     to you.

INMATE BROWN:        I can object and have that noted for the record?

HEARING OFFICER:     Yes, absolutely.  You just did.

INMATE BROWN:        Okay, I object.

HEARING OFFICER:     It is noted, perfect.  Noted for the record.  So, um.  You got

                     the to froms.  As far as the picture, you wanted a picture of

                     the alleged item.  Okay, again, Auburn Correctional Facility

                     prohibits you from having a picture in your possession of

                     contraband.  But, I am happy to show you.

4

INMATE BROWN:          What the fuck is that?

HEARING OFFICER:       That is the alleged item.

INMATE BROWN:          (Not me dude) ? Inaudible.

HEARING OFFICER:       That's the alleged item.  I will show you the photo.  It is part
                       of the record so we will put it in there.

INMATE BROWN:          You laughing, so, so, so, I mean and you you you.

HEARING OFFICER:       I was laughing at you.

INMATE BROWN:          But anyway, ain't no (?) warning, ain't no (inaudible).  If I had
                       that, look at that man.  I mean, how am I going to be holding
                       that and walk all the way down.  Just, just, alright.

HEARING OFFICER:       I am going to give you an opportunity to make a statement.

INMATE BROWN:          Inaudible speaking in the background.

HEARING OFFICER:       Inaudible.  Okay.  That's the photo.  You asked to see it, I
                       am showing it to you.

INMATE BROWN:          Yes.

HEARING OFFICER:       Alright.  So, at this point, um, and that is your signature down
                       at the bottom, is that correct?

INMATE BROWN:          Yes.   Inaudible (something about her)

HEARING OFFICER:       Okay, yup, so he came to conduct the…

5

INMATE BROWN:   Asked if it was alright that he do it.

HEARING OFFICER:  Yup.

INMATE BROWN:   So, I said you know like so I signed my initials(?)

HEARING OFFICER:  And it looks like he went and went after all, everything you asked him to do.

INMATE BROWN:   Yup.

HEARING OFFICER:  He's actually one of the better assistants so.  Alright, so here is what I am going to do at this point Mr. Brown.  I am simply going to read the misbehavior report for the record.  After I do that, I am going to go through the two charges.  Take your plea whether they be guilty or not guilty.  Then after that I will give you an opportunity to make a statement and then we will talk about any witnesses or any further evidence you would like to request.  Okay?

INMATE BROWN:   Yes.

HEARING OFFICER:  So, I have a misbehavior report at Auburn Correctional facility in the name of inmate Brown.  DIN # 11A4897.  Housing location D-4-37.  Location of the incident.  D-block, 4 & 5 center room.  Incident date 1/21/16, incident time approximately 3:30 p.m.  Rule violation 113.10 weapon, 113.11 altered item.  Description of the incident...On the

6

above date and approximate time I was ordered by Sgt. Pike

to conduct a suspicion frisk of Brown, D. 11A4897.  Who

occupied D-4-37 cell.  I ordered Brown out of his cell and

submit to a pat frisk on D-4 company.  During the pat frisk of

Brown, I felt an unknown object in Brown's buttocks area.  I

notified Sgt. Pike who authorized me to strip frisk Brown in

the D-block 4 & 5 center rooms.  During the strip frisk, Brown

voluntarily surrendered to me from his buttocks area, an ice

pick type weapon fashioned out of a toothbrush measuring

approximately 8" long by 1/2" wide.  The weapon was

sharpened to a point on one end and had a cloth handle on

the other end.  No other contraband was found during the

strip frisk.  The weapon was bagged, photographed and

secured in the evidence drop box per directive 4910A.

Dated 1/21/16 it is signed by Officer Cornell.  Were other

inmates involved – no.  At the time of the incident was the

inmate under prior confinement or restriction – yes.  Um, uh,

and you were continued to be confined.  You were moved to

another housing unit that was the SHU and no physical force

was used.   And it is endorsed by the area supervisor um,

one of the sergeants, I can't, I guess it is Pike.  I can't really

read the signature.

INMATE BROWN:          Mumbling in background.

Brown v. Cornell, 9:17-cv-1036   000036

HEARING OFFICER:   So, alright.  And you were under prior confinement at the time of the incident.  You were on keeplock?

INMATE BROWN:   I only had two weeks keeplock.  And um.

HEARING OFFICER:   Okay. Okay, No, no, I'm just asking.

INMATE BROWN:   Oh, okay.

HEARING OFFICER:   It makes a difference for the hearing so I am just noting it.

INMATE BROWN:   Okay.

HEARING OFFICER:   Alright, ah so.  Ah, let's go through those two charges.  With regards to charge 113.10 – weapon report by Officer Cornell, how do you wish to plead, guilty or not guilty?

INMATE BROWN:   Not guilty.

HEARING OFFICER:   Okay.  113.11 – altered item.

INMATE BROWN:   Not guilty.

HEARING OFFICER:   Alright, okay.  I have entered not guilty pleas to both charges in section 12 of the hearing record sheet.  Are those the correct pleas for you?

INMATE BROWN:   Yes. (mumbling)

HEARING OFFICER:   Okay.  Perfect and due to the fact that you were restrained, um, what I am going to do just for convenience is I am just going to put Donnesia Brown by CHO Bauersfeld.

8

INMATE BROWN:        Should I sign that?

HEARING OFFICER:     Yup.  And I will just...

INMATE BROWN:        I'll sign it...inaudible

HEARING OFFICER:     Well, let's put it this way.  The way you are restrained it just makes it easier.

INMATE BROWN:        Oh, okay, alright.

HEARING OFFICER:     So, what I am simply, and what I am going to do is I am going to also put down the reason I am doing it is you are restrained.

INMATE BROWN:        Oh, okay.  No problem

HEARING OFFICER:     Alright?  So, there will be a record that you were restrained. Ah, 1/28/16 and the time now is 9:44 a.m.

INMATE BROWN:        I don't have to be restrained?

HEARING OFFICER:     No, you do have to be restrained.  That's the rule of the box.

INMATE BROWN:        Oh, oh, I see.

HEARING OFFICER:     Let's put it this way, instead of me trying to crumple things up and hand them through the bars.  And you trying to reach up and struggle because of the waist chains and sign, it is just easier that way.

INMATE BROWN:        Okay.

9

HEARING OFFICER:     Alright, so Mr. Brown what if any statement would you like to make regarding the allegation on the misbehavior report?

INMATE BROWN:     I would like to talk to you, but not with that.

HEARING OFFICER:     Unfortunately, we do have to kind of do everything on the record Mr. Brown.  But, um, let, let

INMATE BROWN:     I can't say nothing to you without that?

HEARING OFFICER:     Not really Mr. Brown.  Everything has kind of got to be on the record.

INMATE BROWN:     Okay, well at least it is still on the record.

HEARING OFFICER:     But, but, at the same time, let's put it this way Mr. Brown.

This record, um, um, it is what it is.  So, if you could make any statements you would like to make regarding the allegations on this misbehavior report.

INMATE BROWN:     I don't (?) the allegations period.  As far as this.

HEARING OFFICER:     Okay.

INMATE BROWN:     Alright, this is the statement I'll make.

HEARING OFFICER:     Okay.

INMATE BROWN:     I have been in this facility for two years.  You never even heard of me.  I ain't never had no tier III.  This is the first time I'm in here.

10

HEARING OFFICER:      Okay.

INMATE BROWN:      Now, you know.  Logically speaking um, sir, you have been around.  It ain't likely you new to what is going on in this prison.  Um, I,I was keeplocked for two weeks.  Today was the day I was supposed to get married.

HEARING OFFICER:      Okay

INMATE BROWN:      Why would I be sick and uh, uh, the police.  Officer Cornell and another officer ran in my cell.  I didn't know you know really the procedure about this but somebody told me I was supposed to fight them.   You understand?  I was told.

HEARING OFFICER:      Okay.

INMATE BROWN:      Because now they have to prove why they ran in my cell.  You know what I am saying.  I didn't know this because I am not trying to get in there.  I am trying to get married, trying to change my life.  That's it.  You know, I am trying to, this ticket is cut and dry.  You know.

HEARING OFFICER:      Okay

INMATE BROWN:      I mean it is not like

HEARING OFFICER:      Well basically you said, you were on keeplock anyways for two weeks.  Never had a tier III before and you were supposed to be getting married today.

11

INMATE BROWN:          I've had a tier III.  I had, I had a uh, dirty urine.

HEARING OFFICER:       Okay, but nothing like this.

INMATE BROWN:          Hell no.  Not here.  Look, I was in Elmira.  Let me, let me,

                       just show you the pattern.  I was in Elmira eight months, no

                       ticket.  No ticket.  No ticket.

HEARING OFFICER:       Okay, Yup.

INMATE BROWN:          They called me, said you have a call out to see your

                       counselor.  I go see my counselor.  The counselor says you

                       have been approved for purpose(?) transfer.  Oh, okay.

                       Where do you want to go, so I said Fishkill because I am

                       from the city area. (inaudible)

HEARING OFFICER:       Okay

INMATE BROWN:          I get back to the block and guess what?  They doing a lock

                       down of the block only and they doing a search and they find

                       a weapon in the track of the door.

HEARING OFFICER:       Okay

INMATE BROWN:          Man I am saying, I never, I never, this is my fourth time

                       upstate.  I never had a weapon.  I never had a fight.  Two

                       weeks ago when I had, January 8th, when I had that fight that

                       was the first time in the state so I asked the lieutenant that

                       did the hearing, I said to check my record.  I don't have fights

                                                                              12

in prison.  This is my first time.  I never had no weapon, I never been caught with and I have been facilities.  I been coming to prison since 1993.  I have been in facilities, Sing Sing, Elmira, back 95 – 96.  (?) violations when it was real violent in the jail.  I wasn't getting into nothing.

OFFICER BAUERSFELD: Okay

INMATE BROWN:        I wasn't getting into nothing so I was asking to use your logic.  You know like look at this, look into this.  Like come on huh. I am not going around in jail you got prisoners stabbing officers getting into fights every day.  I am not getting into none of that.  That's not me.  I don't get into none of that.  All I was doing was what I supposed to be doing.  If I get into anything, it's like, you know, refusing programs, you know, little bullshit things.  You know refusing programs.  I don't got nothing to do with no weapon, because I don't need to carry no weapon.  I don't need it, for what.  There is no use for it.  Now, on the other hand, you can see me and say here okay, but then again get rid of prisoners who get caught first time up, known with weapons.

OFFICER BAUERSFELD: Um hmm.

INMATE BROWN:        Which granted is true.  You know because I see, I see them and all of that.  But, that's not me.  I am 47 years old.  I am

13

not trying to stay the fucking rest of my life in prison.  This is not my objective.  I have family.  If you check my record I have family that sends me packages.  I met this woman, we was going to get married.  Then today, you understand what I am saying?  Why would I jeopardize that to be sitting in my cell when they running my cell to have a damn tooth brush in my butt.

OFFICER BAUERSFELD: Okay

INMATE BROWN:  No, I am not, I am not, I mean I am not, I don't care what OMH thinks of me.  I am not sitting here retarded.  I ain't going to lose my damn mind.  Come on man are you serious.  That's like the officers telling you telling me you all listen.  You can't go on man.  I am standing here telling you well don't worry about it.  I am not gonna be nuisance or or pest, as far as to any officer or anybody.  You know what I am saying?  If I feel like me and the teachers not getting along I told the lieutenant you know listen, just remove me from the school building.

OFFICER BAUERSFELD: Um Hmm.

INMATE BROWN:  Yeah, but you know I – I said listen, that will alleviate anything.

OFFICER BAUERSFELD: Yeah.

14

INMATE BROWN:    He waited and tried to give me another ticket and I said lieutenant I told you last time, I didn't even want to be in the school building. Well I am removing you. I am sitting there saying to myself – I asked you that before. Now, I don't have no issues. I was the block porter in B-block. I worked for Brown. I was the block porter for quite a while. Because I came into this jail two years ago January 28th. I am leaving now. Inaudible – ticket to leave the jail. I mean like I don't understand why, who am I, I am not nobody now. I know I have an issue with the Muslims. They got a new private(?) and I am thinking you know, the Muslims had something to do with it. I don't care where you (?) or how you think, because you don't hear they had something to do with the, they was wrong. They wanted to send me food to the cell. You know Muslims I guess. They sent me some food like yo we apologize. They sent me (?) that tried to cut me. The Muslim was trying to cut me.

OFFICER BAUERSFELD:   Okay, that was the fight you were (?) D block.

INMATE BROWN:    Right, so now, I get off. Wednesday, that was Thursday they came ran up in my cell. Then Wednesday she you know, Renee who came to visit me.

OFFICER BAUERSFELD:   Um hmm.

15

INMATE BROWN:            She like you know listen, we ain't gonna have no more problems right? I be like yo listen, I don't know the jail could get locked down. You know as far as I am concerned you know I ain't getting into nothing. She said okay so we still on for next week Thursday as far as you know getting married. I said yeah I mean you know as far as I am concerned yeah.

OFFICER BAUERSFELD: All right.

INMATE BROWN:            And then this. You know what I am saying then I am like I am not, I don't, I don't, why, I mean there's no logic. And look at the ticket. I mean you read plenty of tickets before. You read, you been through plenty of tickets I mean I wouldn't say Elmira. Eight months no ticket. Nothing. No, if you check, I had no ticket in Elmira. Nothing. You know what I am saying? And I, I've got, you know, the Muslims. I guess they (?), just jealous. You know and you have jealous people in prison. Hear what I am saying? That you know, you know, I mean, I didn't think it was that high of a uh,uh, uh, caliber.

OFFICER BAUERSFELD: Okay

INMATE BROWN:            You know, I mean, I am not bothering you.

OFFICER BAUERSFELD: No, that's fine.   (?) I will note your statement Mr. Brown. Obviously, obviously, um

16

INMATE BROWN:            I got family man.  Inaudible

OFFICER BAUERSFELD:  I will be happy to consider your disciplinary history.  Let's,

let's do this.  I will note your statement for the record.  Let's

talk about this.  Other than all the documents you already

received, anything further you want to see?

INMATE BROWN:            I was going to call Pike as a witness, now I don't even want

to talk to him because it's no use.  Because of (inaudible).

OFFICER BAUERSFELD:  Okay, so no witnesses?

INMATE BROWN:            Inaudible.  I just want to go

OFFICER BAUERSFELD:  Okay, let's.  I will tell you, I did have to take testimony from

OMH staff about your mental health status.  Just because of

your, um, just because of the fact that you want.

INMATE BROWN:            Mumbling about OMH

OFFICER BAUERSFELD:  No, that's fine.  I am just letting you know that.

INMATE BROWN:            I was, I was looking.  Oh wait, I am not trying to cut your off.

OFFICER BAUERSFELD:  No, yeah.

INMATE BROWN:            I was looking forward to getting married.

OFFICER BAUERSFELD:  Oh, I bet.

INMATE BROWN:            You know, I was staying out of trouble.  I am trying to get

married (?).  Do you know how many people I ask.  Yo, hook

17

me up with a girl, hook me up, hook me up.  And then I finally get one.  I am going to get married.  I am going to change my life.  You know, I am not coming back to prison.

OFFICER BAUERSFELD:  Well let's hope this hasn't messed that up.  But, let me tell you this, so.

INMATE BROWN:  I messed it up, I was going to get married today.

OFFICER BAUERSFELD:  Let me tell you this.  Okay, so I have taken the test from our OMH that did take place outside your presence.   You are not permitted to review it, but I will give you a 2176 form that I did in fact take testimony from your records.  Ah, at this point if there is nothing further, here is what I am going to do.  I am going to conclude the evidentiary portion of this hearing.  I am going to consider the evidence, consider your statement and issue a decision in this matter.  After I have done so, it will go on the record.  I will provide you with a copy at that time.  Okay?

INMATE BROWN:  Okay.

OFFICER BAUERSFELD:  Do you understand.

INMATE BROWN:  Yes

OFFICER BAUERSFELD:  All right.  The time right now is 9:53 a.m. and this hearing is adjourned for disposition.

18

OFFICER BAUERSFELD: Today's date is January 28ᵗʰ 2016.  The time now is 10:05

a.m.  This is CHO Bauersfeld at the Auburn correctional

facility.  Present with me in the hearing room.

INMATE BROWN:          Donnesia Brown 11A4897.

OFFICER BAUERSFELD: Thank you Mr. Brown.   Mr. Brown I have reached a decision

with regard to the charge of, actually before I do that.  I have

the 2176 form for you.

INMATE BROWN:          Thank you

OFFICER BAUERSFELD: What that form indicates is that I did take testimony from

OMH staff that did take place outside your presence. And

you are not permitted to review it.  Then on January 28,

2016, I did take testimony or witness provided confidential

testimony regarding the mental health status of inmate

Brown. So, I have signed this. Due to the fact that you are

restrained I am simply putting, Donnesia Brown by CHO

Bauersfeld.  I am going to indicate the reason I am doing

that is you are restrained.

INMATE BROWN:          Man, I was distraught man. I thought, I didn't even know,

you know, it was the first time.

OFFICER BAUERSFELD: Let's put it this way, so here is just this for your records.  So,

all right.  So, with regards to the disposition.  Regarding the

charge of the 113.10 weapon, I find you guilty.  With the

19

charge of 113.11 altered item, I find you guilty.  There is a $5 mandatory surcharge.  I am going to impose a period of SHU confinement, loss of packages, commissary and phone. That will be for a period of 180 days, however, I am going to suspend 60 days of that defer that for 180 days.  So, I am going to give you credit back to the date of the incident.  So you are going to start all of that January 21, 2016.  Your release date will be May 20, 2016.  All right, there is no loss of visitation.  I am not recommending any loss of good time. Statement of evidence for live pod – 1. The misbehavior report by correction officer Cornell that pursuant to frisk a weapon was recovered from your person.  2. Photo's of the weapon to from.  3.  Your not guilty plea's your statement you were on keeplock and you are getting married why would you jeopardize that.  4. Confidential test from OMH – reason for disposition – Your lack of history for 113.11 was a mitigating factor based on the confidential OMH testimony I find you are capable of participating in the hearing and your mental health status is not a contributing or mitigating factor. Based on the credible misbehavior report from correction officer Cornell and the photo of the weapon I find that there is substantial evidence that you did have a weapon on you in your area of responsibility.  For special instructions, I have

20

indicated none.  You do have one prior weapon in the past five years.  At the time of the hearing you were housed in the SHU cell and the sanctions I imposed are within the published guideline.  This is a Tier III hearing therefore you do have the right to appeal my decision to the commissioners' office in Albany within 30 days in writing.  I will provide you the form to do so at this time.  If you do choose to appeal my decision, please make sure you state clearly on the form the reason you are objecting to it so whoever is reviewing it in Albany will be able to respond appropriately.  Do you understand your appeal rights?

INMATE BROWN:          Yes.

OFFICER BAUERSFELD: Okay.  Um all right.  At this point I have signed the disposition.  I have put Donnesia Brown by CHO Bauersfeld due to the fact you are restrained.  Today's date is January 28 2016.  The time now is 10:07 a.m.  I am going to provide you with a copy of all 4 pages of the disposition at this time and this hearing is concluded.

TAPE #2                Today's date is January 28, 2016.  This tape will record the tier III confidential OMH for Brown, Donnesia 11A4897 and I will stop the recorder to check the tape.

TAPE OFF

Brown v. Cornell, 9:17-cv-1036   000050

TAPE ON

OFFICER BAUERSFELD: Today's dates is January 28, 2016.  The time now is 9:26 a.m.  This is CHO Bauersfeld at the Auburn Correctional facility.  This will be the confidential portion of the Tier III hearing on Brown, Donnesia 11A4897.  Testifying via speaker phone at this time – Suzanne Porter.  Thank you Miss Porter.  Miss Porter this is going to be again the confidential testimony regarding inmate Brown in an incident January 21 of 2016.  Are you familiar with the misbehavior report and the mental health status of inmate Brown?

MISS PORTER (OMH): Yes, I have reviewed his ticket and I have also looked extensively  into his chart.  Do you want me to just go ahead…

OFFICER BAUERSFELD: Go right ahead.

MISS PORTER (OMH): Thank you.  No previous inpatient hospitalization prior to this incarceration.  Although, he did have one past suicide "attempt" I have attempt in quotes because he just scratched the top side of one wrist.  No in patient hospitalization reported during this incarceration.  He has had in RCTP admission that was for one over night after receiving this ticket and indicating to security staff he was having thoughts of self-harm.  He was released the following day.  He was

22

last seen by RCTP coordinator Stephanie Agosh.  Mental
status was as follows...  He presented as alert, calm and
oriented type 3.  He was able to engage in session without
issue.  He was attentive and focused.  No signs of hyper
vigilance or indication of paranoia.  No sign of psycho motor
agitation or retardation.  Memory and recall appear in tact.
Mood was (?) and stable.  Affect is congruent and full in
range.  Speech was fluid, spontaneous and relevant.
Thoughts were organized and goal oriented.  He was polite,
cooperative and stable throughout the interaction.  No sign
of illusion or delusional material.  No indication to responding
to unseen stimuli.  He's not engaged in any self-injurious
behavior and denied any current thoughts of hurting himself
of others.  He does not have a mental health diagnosis.  Any
additional diagnosis are also deferred.  He is an OMH level
6, which means he is not active as a patient for our services.
He was not given a diagnosis during his brief staff at RCTP.
At the time of the incident he was not prescribed any
medications.  He has had SHU time during this
incarceration.  Most recently from 10/20/13 – 9/14/14.  He
has been in keeplock on a number of occasions during this
incarceration.  Most recently from 1/8/16-1/22-16.  It is my
clinical opinion that the inmate patient does not present with

23

symptoms related to mental illness that would preclude him from participating in this disciplinary hearing.  Upon reviewing the mental health records.  I am unable to offer a clinical opinion in relation to culpability.  Upon reviewing the available mental health information, I am unable to provide a clinical opinion as to the presence of any mitigating factors related to the alleged conduct.

OFFICER BAUERSFELD: Okay

MISS PORTER:            I have no clinical opinion as to his suitability for disciplinary housing at this time.  Nor do I have a clinical opinion as to the duration of any disciplinary sanction if given.

OFFICER BAUERSFELD: Okay.  Well thank you for your testimony.  I do not have any further questions.  You have covered all of my questions.  And so, at this point, the time now is 9:30 a.m. and that concludes the confidential portion of this tier III hearing.

24