**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONNESIA BROWN,**

                                         **Plaintiff,**

        **vs.**

                                                        **9:17-cv-01036**
                                                        **(MAD/ATB)**

**MATTHEW CORNELL,**
*Correctional officer,*

                                         **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**RUBENSTEIN & RYNECKI**                  **SCOTT E. RYNECKI, ESQ.**
16 Court Street, Suite 1717
Brooklyn, New York 11241
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**                **AIMEE COWAN, AAG**
**STATE ATTORNEY GENERAL**
300 South State Street, Suite 300
Syracuse, New York 13202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On September 19, 2017, Plaintiff Donnesia Brown, a former inmate at the Auburn

Correctional Facility ("Auburn CF"), filed a complaint in the Northern District of New York,

pursuant to 42 U.S.C. § 1983, against Defendant Corrections Officer Matthew Cornell, the New

York State Department of Corrections and Community Supervision ("DOCCS"), and the State of

New York.  Dkt. No. 1.  On November 6 and December 11, 2017, Defendants moved to dismiss

Plaintiff's action for lack of subject matter jurisdiction.  Dkt. Nos. 11, 17.

On January 11, 2018, Plaintiff filed a response agreeing that the claims against DOCCS and the State of New York must be dismissed, but argued that the state law claims against Defendant Cornell should be permitted to proceed in part.  Dkt. No. 19.  On June 26, 2018, the Court issued a Memorandum-Decision and Order granting the motion to dismiss all claims against the DOCCS and the State of New York, and also granted in part and denied in part the motion to dismiss all state law claims against Defendant Cornell.  Dkt. No. 21.  Following the Court's decision, Defendant Cornell was the only remaining defendant.  *Id.*

On August 1, 2020, Defendant moved for summary judgment.  Dkt. No. 58.  On October 21, 2020, Plaintiff filed a response.  Dkt. No. 61.  Defendant filed a reply on October 28, 2020.  Dkt. No. 62.  As set forth below, Defendant's motion for summary judgment is granted.

## II. BACKGROUND

On January 21, 2016, Defendant conducted a pat frisk of Plaintiff.  Dkt. No. 58-1 at ¶¶ 4, 8.  Defendant claimed that he had information that Plaintiff had a weapon.  *Id.* at ¶ 9.  Defendant then received permission to conduct a "strip frisk" in a separate and isolated room.  *Id.* at ¶ 11.  During the strip frisk, Defendant Cornell claims that he recovered an eight-inch-long sharpened weapon from Plaintiff's person.  *Id.* at ¶¶ 14-15.  Plaintiff denies having a weapon and claims that Defendant planted the weapon during the strip frisk.  Dkt. No. 61-1 at ¶¶ 14-15.  Sergeant Pyke was present for the strip frisk and testified that he did not observe Defendant plant a weapon on Plaintiff.  Dkt. No. 58-1 at ¶ 17.

DOCCS held a thirty-minute disciplinary hearing on January 28, 2016.  *Id.* at ¶¶ 24-25. Although Plaintiff maintained his innocence throughout the hearing, he was found guilty on the basis of Defendant Cornell's allegations.  *Id.*  As a result of this finding, Plaintiff was sentenced to

solitary confinement for six months.  *Id.* at ¶ 25.

Although Plaintiff was initially scheduled to be released from prison on August 26, 2016, for his underlying conviction, he was indicted over the incident with the weapon.  Dkt. No. 58-14. On October 11, 2016, Plaintiff pleaded guilty in order to avoid a lengthier sentence and was sentenced to a term of imprisonment of two-to-four years.  Dkt. No. 58-1 at ¶ 38.  On October 13, 2016, Plaintiff appealed his conviction.  Dkt. No. 61-1 at ¶ 61.

On December 23, 2016, District Attorney Jon Budelmann wrote to Judge Leone and stated that he had recently learned that Defendant had "placed a contraband weapon on another inmate at Auburn CF in April 2015" and despite having no direct evidence that Plaintiff was subject to the same conduct, the District Attorney's Office would not oppose any motion submitted by Plaintiff to vacate his conviction.  Dkt. No. 58-15.  Defendant denies planting a weapon on Plaintiff.  Dkt. No. 58-1 at ¶ 44.

After receiving this letter, Plaintiff filed a motion to dismiss his conviction and indictment.  Dkt. No. 58-16.  On January 18, 2017, Judge Mark A. Fandrich vacated Plaintiff's conviction.  *Id*.  Plaintiff was released from DOCCS's custody on January 19, 2017.  Dkt. No. 61-1 at ¶ 63.  Plaintiff admittedly never filed a grievance regarding the incident despite having filed grievances in the past.  Dkt. No. 58-9 at 57-58.

On September 19, 2017, Plaintiff filed this complaint asserting seven causes of action for violations of state law and constitutional rights, including false arrest and false imprisonment, denial of the right to a fair trial, common law assault, common law battery, municipal liability, and negligent hiring, retention, training, and supervision.  Dkt. No. 1.

On November 6, 2017, Defendants filed a motion to dismiss all claims against DOCCS and the State of New York for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the

Federal Rules of Civil Procedure.  Dkt. No. 11.  On December 11, 2017, Defendant Cornell filed

a separate motion to dismiss for lack of subject matter jurisdiction.  Dkt. No. 17.  On January 11,

2018, Plaintiff filed a response agreeing that the claims against DOCCS and the State of New

York must be dismissed, but arguing that the state law claims against Defendant Cornell should

be permitted to proceed in part.  Dkt. No. 19.

On June 26, 2018, the Court issued a Memorandum-Decision and Order granting the

motion to dismiss all claims against DOCCS and the State of New York, and also granting in part

and denying in part the motion to dismiss all state law claims against Defendant Cornell.  Dkt.

No. 21.  On August 31, 2020, Defendant moved for summary judgment asserting that (1) Plaintiff

had failed to exhaust his administrative remedies, (2) Plaintiff's false arrest and imprisonment

claims should be dismissed as Defendant had probable cause to search Plaintiff, (3) Plaintiff's due

process violation claims must be dismissed as Plaintiff failed to present evidence supporting these

claims, (4) Plaintiff's emotional distress claim is barred by the PLRA, and (5) Defendant is

entitled to qualified immunity.  Dkt. No. 58-2.

### III. DISCUSSION

**A.      Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no

genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43

F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the

court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at

36–37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* at 554 (quoting *Anderson*, 477 U.S. at 252) (emphasis in original). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

## B.   Exhaustion

Defendant asserts that Plaintiff's claims are barred because he failed to exhaust his administrative remedies. Dkt. No. 58-2 at 6-10. Plaintiff asserts that he was not required to

exhaust his administrative remedies because such remedies were unavailable to him.  Dkt. No.
61-2 at 14-17.  As set forth below, the Court finds that Plaintiff failed to exhaust his
administrative remedies in part.

The Prison Litigation Reform Act states that "[no] action shall be brought with respect to
prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined
in any jail, prison, or other correctional facility until such administrative remedies as are available
are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement applies to all suits brought
by inmates regarding aspects of prison life.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).
Inmates must exhaust all available administrative remedies even if they are seeking only money
damages that are not available in prison administrative proceedings.  *See Giano v. Goord*, 380
F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850
(2016).  The failure to exhaust is an affirmative defense that must be raised by the defendants and,
as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion
requirements.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Key v. Toussaint*, 660 F. Supp. 2d
518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative
remedies, the inmate must complete the administrative review process in accordance with the
applicable state rules.  *See Jones*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81
(2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must
complete the administrative review process in accordance with the applicable procedural rules,
including deadlines, as a prerequisite to bringing suit in federal court.  *See Woodford*, 548 U.S. at
90–103.

New York State has a three-step administrative review process, commonly referred to as

6

the Inmate Grievance Program ("IGP").  First, a grievance is submitted to the Inmate Grievance

Resolution Committee ("IGRC"), which reviews and investigates the formal complaint before

issuing a written determination.  *See* 7 N.Y.C.R.R. § 701.5(b).  Second, an adverse decision by

the IGRC may be appealed to the Superintendent of the Facility.  *See id*. § 701.5(c).  Third, an

adverse decision by the Superintendent may be appealed to the Central Office Review Committee

("CORC").  *See id*. § 701.5(d).  If all three levels of review are exhausted, then the prisoner may

seek relief in a federal court pursuant to section 1983.  *See Bridgeforth v. DSP Bartlett*, 686 F.

Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524).

      To the extent a civil rights claim must be exhausted by the grievance process, completion

of the three-tiered process, through and including a final decision by the CORC, must be

completed before an action asserting that claim may be filed in federal court.  *See, e.g., Casey v.*

*Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a

decision from CORC after commencing litigation does not satisfy PLRA's requirement that

administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to

commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d

116, 122–23 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. 516) (emphasis in

original); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012).

"[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at

the time the action was commenced."  *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL

268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

      Plaintiff concedes that he never exhausted his administrative remedies.  Dkt. No. 58-9 at

57-58; Dkt. No. 61-2 at 15.  Plaintiff asserts that he did not file a grievance or appeal the decision

from his disciplinary hearing because he did not want "to stir up any trouble while he was doing

his time, and that it would have been a waste of time to file any grievances or appeals as he believed they just threw them in the garbage." Dkt. No. 61-2 at 15.  Plaintiff additionally asserts that he was unable to exhaust his administrative remedies because he was incarcerated in the Auburn C.F. SHU for four months after being found guilty at the disciplinary hearing on the contraband charges, and he was subsequently transferred to Comstock C.F. and then finally to Five Points C.F. before he was released on January 19, 2017.  *Id*.

Plaintiff relies on *Williams v. Correction Officer Priatno*, 829 F.3d 118 (2d Cir. 2016).  In *Williams*, the defendant, a corrections officer, searched through the plaintiff's cell and went through his legal paperwork for a court case regarding a prior assault he suffered from prison officials.  *Id*. at 120.  The defendants then assaulted the plaintiff in a room with no cameras and told him, "'this is what running your mouth gets you.'"  *Id*.  About two weeks later, the plaintiff drafted a grievance and gave it to a corrections officer to submit on his behalf.  *Id*. at 121.  One week later, the plaintiff saw the superintendent and asked about his grievance.  *Id*.  The superintendent said he was unaware of the grievance and said to follow up, but the plaintiff was transferred to another facility just one week later.  *Id*.

The plaintiff never received a response and claimed that the officer never filed it on his behalf.  *Id*.  The Second Circuit accepted this allegation as true.  *Id*. at 124.  While the court agreed that the plaintiff technically could have filed a new grievance at his new facility, the court held that, "the regulatory scheme providing for that appeal is 'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it].'"  *Id*. (quoting *Ross*, 136 S. Ct. at 1859)  Specifically, the regulations did not detail how a prisoner was to appeal or exhaust an administrative remedy where an officer failed to file the grievance.  *Id*.  "The regulations simply do not contemplate the situation in which [the plaintiff] found himself, making it practically impossible for him to

8

ascertain whether and how he could pursue his grievance." *Id*. The plaintiff's transfer only further complicated a confusing situation to begin with. *Id*. at 126.

Plaintiff's reliance on *Williams* is misplaced. First, *Williams* delt with a prison grievance policy that was unavailable to the plaintiff because it was so opaque. *Id*. at 124. Here, Plaintiff asserts that the exhaustion of administrative remedies would have been futile and therefore were unavailable to him. Dkt. No. 61-2 at 14-16. Unlike *Williams*, Plaintiff was housed at Auburn C.F. for several months following the incident at issue, during which time he could have filed a grievance but chose not to based on his subjective belief that it would have been futile.   Second, in *Williams*, the plaintiff actually drafted and attempted to file a grievance before being transferred. Here, however, Plaintiff admittedly did not even attempt to file a grievance. Dkt. No. 58-9 at 57-58. Therefore, *Williams* is distinguishable from the present case. Plaintiff's reliance on *Braxton* is misplaced for these same reasons. *See Braxton v. Bruen*, No. 9:17CV1346, 2020 WL 5752333, *7-8 (N.D.N.Y. Aug. 24, 2020).

Rather, courts have regularly found that a plaintiff's subjective belief that filing a grievance would be a "waste of time" is insufficient to demonstrate that administrative remedies were unavailable. *See Geer v. Chapman*, No. 9:15-cv-952, 2016 WL 6091699, *5 (N.D.N.Y. Sept. 26, 2016); *see also Richard v. LeClaire*, No. 9:15-cv-6, 2019 WL 5197041, *8 (N.D.N.Y. May 6, 2019) (finding that the plaintiff's "conclusory assertions regarding the futility of grievances" fails to raise a material issue of fact as to the availability of the IGP) (citation omitted). Here, Plaintiff has not claimed that opacity of procedures under the IGP rendered the grievance procedure unavailable to him and his conclusory assertions regarding futility are insufficient to satisfy his burden. Accordingly, the Court grants Defendant's motion for summary

judgment as to Plaintiff's false arrest/imprisonment claim.[1]

      As to Plaintiff's due process claim, however, the Court finds that Plaintiff was not required to exhaust administrative remedies to pursue that claim.  Generally, an inmate bringing a due process claim arising from a prison disciplinary hearing must complete the disciplinary administrative appeal process, not the IGP procedures, to exhaust administrative remedies.  *See, e.g.*, *Johnson v. Fraizer*, No. 16-cv-6096, 2016 WL 7012961, *3 (W.D.N.Y. Dec. 1, 2016) (citation omitted).  Here, however, Plaintiff's due process claim alleges that Defendant violated his right to a fair trial by providing fabricated evidence to the Cayuga County District Attorney, which led to criminal charges being brought against Plaintiff.  *See* Dkt. No. 1 at ¶¶ 54-59.  Nothing in this claim relates to the Tier III disciplinary hearing or Plaintiff's time spent in SHU as a result thereof.  Rather, this claim relates solely to the criminal case brought against Plaintiff, which is unrelated to "prison conditions" as contemplated by the PLRA.  *See* 42 U.S.C. § 1997e(a); *see also Cheatham v. Saturne*, No. 1:18-cv-3154, 2019 WL 10631254, *1 (N.D. Ga. Mar. 1, 2019) (discussing cases not subject to the PLRA's exhaustion requirement) (citations omitted).

---

[1]  In the alternative, the Court finds that Plaintiff's false arrest/imprisonment claim fails on the merits.  The law is clear that "'[a] plaintiff does not have a claim for false arrest … under [§] 1983 if, at the time of his arrest …, he is already in custody or incarcerated on other charges, because there is no deprivation of liberty interests.'"  *Wong v. LaPierre*, No. 8:07-cv-1110, 2011 WL 13248503, *8 (N.D.N.Y. Mar. 23, 2011) (quotation and other citations omitted); *Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, *14 (S.D.N.Y. Mar. 31, 2006) ("As plaintiff was already incarcerated at the time of the assault proceeding, he suffered no new seizure"); *Goncalves v. Reynolds*, 189 F. Supp. 2d 278, 283 (W.D.N.Y. 2001) (holding that the plaintiff cannot maintain a claim for false arrest where he was already being detained pursuant to earlier charges and based upon his prior convictions); *Perez v. Hewitt*, No. 04 Civ. 10112, 2008 WL 780628, *2 (S.D.N.Y. Mar. 24, 2008) (noting that "inmates retain only a 'limited right to bodily privacy' under the Fourth Amendment" and dismissing the plaintiff's false arrest/imprisonment claim because, as an inmate, the plaintiff did "not have a reasonable expectation of privacy in his person").  Although Plaintiff may have been able to bring a malicious prosecution claim against Defendant based on Defendant's alleged fabrication of evidence that was forwarded to the Cayuga County District Attorney's Office that resulted in Plaintiff remaining in state custody beyond the expiration of his original criminal sentence, Plaintiff, who is represented by counsel, did not bring a malicious prosecution claim.  *See Parker v. City of New York*, No. 05 Civ. 1803, 2008 WL 110904, *9 (S.D.N.Y. Jan. 7, 2008) (noting that a malicious prosecution claim may exist where "the prisoner's period of incarceration was lengthened as a result of new charges brought against him while he was in custody").

This result is further supported by the fact that Plaintiff would not have been able to pursue this claim until after his conviction was overturned on appeal or otherwise terminated in his favor.  Had Plaintiff proceeded with this claim prior to having his conviction vacated, the case would have been dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), because a judgment in Plaintiff's favor on his right to a fair trial/fabricated evidence claim would necessarily imply that his prior conviction was invalid.  *See McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (discussing the favorable termination requirement set forth in *Heck*).  As such, the Court finds that Plaintiff was not required to exhaust his administrative remedies under the PLRA before pursuing his right to a fair trial claim relating to the new criminal charges.

Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's false arrest/imprisonment claim but denies the motion as to Plaintiff's due process fair trial claim.

## C.    Right to a Fair Trial

In his third cause of action, Plaintiff alleges that Defendant, in creating and forwarding false evidence, violated his "right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution."  Dkt. No. 1 at ¶ 58.  Defendant contends that this claim must be dismissed insofar as it seeks relief under the Fifth and Sixth Amendments because the Fifth Amendment is only applicable to the federal government and the Sixth Amendment "pertains to criminal prosecutions" and "[b]ecause this case is civil and not criminal in nature" the claim must be dismissed.  *See* Dkt. No. 58-2 at 16-17.  With respect to Plaintiff's claim under the Fourteenth Amendment, Defendant contends that it must be dismissed because Plaintiff has presented only conclusory statements and speculation in support of his position that Defendant fabricated evidence.  *See id.* at 17-18.  The Court disagrees.

"The Due Process Clause guarantees a criminal defendant's 'right to a fair trial.'"  *Frost v.*

*N.Y.C. Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020) (quoting *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010)).  "This right is violated '[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'"  *Id.* (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  "Such violations are 'redressable in an action for damages under 42 U.S.C. § 1983.'"  *Id.* (quotation omitted).  "And unlike a malicious prosecution claim, 'a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff.'"  *Id.* (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277–78 (2d Cir. 2016)).

To set forth a claim of the denial of the right to a fair trial, the plaintiff must establish that an "(1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012).  The inquiry as to causation is "whether the liberty deprivations that occurred are legally traceable back even further to [the] earlier investigatory act of fabrication."  *Zahrey*, 221 F.3d at 352.  In a recent decision, however, the Second Circuit made clear that the right to a fair trial can be violated even if the fabricated evidence that was supplied to the prosecutor was not ultimately used at trial.  *See Frost*, 980 F.3d at 250.  Moreover, it is important to note that, although the officer need not directly provide the fabricated evidence to the prosecutor, no causation for this claim would exist if such evidence was never brought to the prosecutor's attention.  In other words, the claim only accrues "when fabricated information is forwarded to a prosecutor and results in the deprivation of a defendant's liberty."  *Soomro v. City of New York*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (citation omitted).

Initially, the Court finds that it is unnecessary to determine the precise constitutional amendment underpinning Plaintiff's due process right to a fair trial claim.  The Second Circuit has noted that its own decisions have been "'inconsistent as to whether' fabrication of evidence claims 'arise[] under the Sixth Amendment right to a fair and speedy trial, or under the due process clauses of the Fifth and Fourteenth Amendments.'"  *Morse v. Fusto*, 804 F.3d 538, 547 n.7 (2d Cir. 2015) (quotation and other citations omitted).  Despite these inconsistencies, the Second Circuit has specifically declined to clarify the issue, noting that regardless of which amendment the right is rooted it, it is undisputed that the "constitutional harm resulting from the falsified information at issue is … redressable in an action for damages under 42 U.S.C. § 1983."  *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 276 n.6 (2d Cir. 2016) (citing *Morse v. Fusto*, 804 F.3d 538, 547 n.7 (2d Cir. 2015)).  In line with this authority, the Court declines to determine whether the right to a fair trial is rooted in the Sixth Amendment or Fifth and Fourteenth Amendments, or both.

Next, the Court finds that, contrary to Defendant's position, Plaintiff has supported his claim with more than mere speculation and conclusory statements.  Defendant relies on a number of cases where the courts dismissed the plaintiffs' right to a fair trial claim because the claims were supported by nothing more than the plaintiffs' speculation that the officers had falsified evidence.  *See* Dkt. No. 58-2 at 17-18 (citing cases).  Here, however, Plaintiff's claim is supported by considerably more than mere speculation.

For example, in the Investigative Report prepared by the Office of Special Investigations, it was noted that there was sufficient evidence to corroborate the allegation that Defendant made a verbal admission to Cayuga County Assistant District Attorney ("ADA") Brian Leeds wherein Defendant admitted to planting weapons on inmates at Auburn C.F.  *See* Dkt. No. 61-3 at 2.

Further, the investigator searched Defendant's personal locker and vehicle and found various contraband items and "potential inmate style weapons." *Id.* at 2-3. Moreover, based on Defendant's admission that he had planted weapons on inmates to ADA Leeds and the various contraband items found in Defendant's possession, the Office of Special Investigations reviewed all facility Unusual Incident's and Inmate Misbehavior Reports issued by Defendant since 2014. *See id.* at 3. Of the thirty-eight (38) inmates issued a Misbehavior Report by Defendant for a weapon, twenty-two (22) of the inmates alleged that they had been set up with the weapon by Defendant and fifteen (15) of the inmates admitted that the weapon found by Defendant was theirs. *See id.*[2] As a result of the investigation, on July 30, 2017, Defendant was issued a Notice of Discipline for his failure to properly secure contraband or report contraband found and for his failure "to comport himself in a lawful manner by planting evidence on an inmate and for issuing false/misleading Misbehavior Reports and statements during an official questioning conducted by OSI." *Id.* at 4. On February 27, 2018, Defendant resigned from his position as a Corrections Officer with DOCCS.

Defendant also relies on a report written by Sgt. Pyke dated January 21, 2016, as well as his deposition testimony. In his report, Sgt. Pyke indicates that he ordered Defendant to perform a pat frisk of Plaintiff. *See* Dkt. No. 58-12 at 16. Sgt. Pyke indicated that, during the frisk, Defendant felt an unknown object in Plaintiff's "buttocks area," causing Sgt. Pyke to authorize Defendant to perform a strip frisk of Plaintiff. *See id.* At this point, the report indicates that Plaintiff voluntarily surrendered "an ice pick type weapon from between his buttocks." *Id.* During his deposition on January 3, 2020, Sgt. Pyke verified the authenticity of his January 21, 2016 report. *See* Dkt. No. 58-11 at 27-31. Notably, however, during his deposition Sgt. Pyke

---

[2] *One inmate refused to be interviewed.*

14

stated that he did not recall observing the pat frisk or the strip search of Plaintiff or Defendant obtaining the weapon from Plaintiff.  *See id.* at 30-31.  Further, nothing in his report indicates that the report was based on his first-hand observation of the search, rather than being based on a second-hand account provided by Defendant.

Contrary to Defendant's assertions, Plaintiff's right to a fair trial claim is supported by more than mere speculation and conclusory statements.  As such, the Court finds that questions of fact preclude granting Defendant's motion for summary judgment as to this claim.[3]

**D.    Damages**

Defendant argues that because Plaintiff did not suffer a "physical injury" as required by the PLRA, he cannot seek compensatory damages.  *See* Dkt. No. 58-2 at 21-22.  The Court disagrees.

Section 1997e(e) of the PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," and "applies to claims in which a plaintiff alleges constitutional violations."  42 U.S.C. § 1997e(e); *see also Thompson v. Carter*, 284 F.3d 411, 416-17 (2d Cir. 2002).  While the PLRA limits recovery of damages for mental and emotional injury with no showing of physical injury, the Second Circuit has made

---

[3]  In his motion, Defendant argues that he is entitled to qualified immunity as to Plaintiff's false arrest/imprisonment claim based on the existence of "arguable probable cause," but fails to raise the qualified immunity defense as to Plaintiff's right to a fair trial claim.  *See* Dkt. No. 58-2 at 22-23.  Even assuming Defendant had raised this affirmative defense to Plaintiff's right to a fair trial claim, it would necessarily be denied.  "'When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.'"  *Garnett*, 838 F.3d at 275 (quotation omitted).  Here, questions of fact would preclude granting summary judgment based on qualified immunity for the alleged violation of this clearly established right.  *See Ricciuti*, 124 F.3d at 130.

clear that "it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Thompson*, 284 F.3d at 416.

Here, contrary to Defendant's assertion, Plaintiff is still entitled to recover compensatory damages if he prevails on his right to a fair trial claim based on his loss of a "constitutional liberty interest." *Rodriguez v. Touchette*, No. 5:19-cv-143, 2020 WL 2322615, *6 (D. Vt. May 11, 2020) (citations omitted); *Holland v. City of New York*, 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) (collecting cases). Compensatory damages for intangible deprivations of a plaintiff's liberty and personal rights – as distinct from pain and suffering, mental anguish, and mental trauma – are not barred by the PLRA. *See Rosado v. Herard*, No. 12 Civ. 8943, 2014 WL 1303513, *13 (S.D.N.Y. Mar. 25, 2014); *see also Malik v. City of New York*, No. 11 Civ. 6062, 2012 WL 3345317, *16 (S.D.N.Y. Aug. 15, 2012).

Accordingly, the Court denies Defendant's motion for summary judgment insofar as he seeks dismissal of Plaintiff's claim for compensatory damages.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 58) is **GRANTED in part and DENIED in part**; and the Court further

      **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 16, 2021
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

17